In the Matter of RADAMES JIMENEZ, Respondent, v THOMAS A. COUGHLIN, III, as Commissioner of the Department of Correctional Services, et al., Appellants.

Third Department, May 1, 1986

1

**APPEARANCES OF COUNSEL**

*Robert Abrams, Attorney-General (Betsy Broder* and *William J. Kogan* of counsel), for appellants.

*Karen L. Murtagh* and *David C. Leven (Lee Davis* of counsel), for respondent.

**OPINION OF THE COURT**

LEVINE, J.

Petitioner, an inmate serving a sentence of incarceration in a State correctional facility, entered the United States from the Dominican Republic in 1966 at the age of three and has lived here since then as a resident alien. In June 1985, having virtually served that portion of his sentence which would have

rendered him eligible for participation in a temporary release program, he made inquiry regarding the prospects for admittance to the program. It was determined that he was ineligible for participation because an investigation was then pending before the United States Immigration and Naturalization Service (INS) as to whether deportation proceedings would be brought against him. Authority for that conclusion is found in appendix A to the departmental regulations concerning eligibility for inmate participation in work release programs (7 NYCRR 1900.4 [c]). Appendix A provides that an alien inmate subject to deportation may not be admitted to a temporary release program unless INS advises that it has no intention to initiate deportation proceedings following the inmate's release from incarceration.

Petitioner then commenced the instant proceeding to challenge the constitutionality of the regulation making petitioner ineligible for the temporary release program as a denial of the equal protection of the laws. The thrust of the equal protection claim set forth in the petition is that, except in the case of an alien, the pendency of an investigation by an outside law enforcement agency is insufficient to render an inmate ineligible for a temporary release program; such investigation must have at least reached the stage of formal accusation by the agency as reflected in the actual issuance of a warrant against the inmate (see, 7 NYCRR 1900.4 [c] [4]). Therefore, the petition alleges, petitioner was discriminated against purely on the basis of his alienage. Special Term agreed with petitioner, prohibited respondents from barring petitioner's application for participation in the temporary release program, and directed that any application by petitioner for admittance into the program be considered on its merits. This appeal followed.

Contrary to respondents' argument on appeal, the application of the temporary release program regulations in the instant case clearly creates a distinction which has disadvantaged petitioner in that it bars him from temporary release by reason of a disqualification to which citizen-inmates are not subject. This, however, only begins the equal protection analysis since "[t]here is hardly a law on the books that does not affect some people differently from others" (San Antonio School Dist. v Rodriguez, 411 US 1, 60 [Stewart, J., concurring]). Here, as almost invariably is the case, whether the difference in treatment between that accorded petitioner and citizen-inmates otherwise in like circumstances violates the equal protection clause will largely turn on the level of

judicial review that is required (see, Gunther, *The Supreme Court, 1971 Term—Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection,* 86 Harv L Rev 1, 8 [1972]). Petitioner contends that the disadvantage imposed by the regulations is based solely on alienage. Since alienage is, under well-established precedent, a suspect classification, petitioner urges that his automatic exclusion from temporary release programs is subject to strict scrutiny (see, e.g., *Bernal v Fainter,* 467 US 216; *Sugarman v Dougall,* 413 US 634; *Graham v Richardson,* 403 US 365).

Were strict judicial scrutiny to be applied here, the burden on respondents may well be insurmountable in meeting the requirements of the test, namely, that the blanket disqualification of petitioner serves a compelling State interest by the least restrictive means available (see, *Bernal v Fainter, supra,* p 227; *Shapiro v Thompson,* 394 US 618, 634-637). However, we are unpersuaded that strict scrutiny is required in the instant case. Strict scrutiny is applied in only two instances, where the statutory or regulatory classification impinges on fundamental rights or discriminates against a suspect class (*San Antonio School Dist. v Rodriguez,* 411 US 1, 17, *supra*).

Concededly, petitioner has no substantive, let alone fundamental, right to be prematurely released from confinement. Therefore, he relies solely on his status as a member of a suspect class. We do not agree with his contention and the holding by Special Term, however, that the classification out of which petitioner's ineligibility arose is based solely on alienage. Under the regulations as applied in this case, only inmate aliens subject to deportation whose cases are under continuing investigation by INS are disqualified from participation in temporary release programs. Additionally, not all aliens incarcerated for conviction of a crime are statutorily deportable (see, 8 USC § 1251 [a] [4]). Thus, the class which has actually been discriminated against under the regulations is significantly more circumscribed than petitioner would suggest. For the reasons that follow, we conclude that this more narrowly drawn classification is not governed by the strict scrutiny test.

First, we read the United States Supreme Court's decision in *Plyler v Doe* (457 US 202) as flatly holding that deportable aliens (there the children of parents who illegally entered the country) do not constitute a suspect class for purposes of equal protection analysis (*supra,* at p 223). Indeed, it was only because of the special circumstances of that case that a bare

majority of the court held that the question was even elevated to the intermediate level of judicial review, requiring Texas to establish that the classification was substantially related to an important State interest *(supra,* at p 218, n 16; p 224; *see, Lalli v Lalli,* 439 US 259, 265; *Craig v Boren,* 429 US 190, 197).* Those special circumstances were (1) the State's total denial of access to public education for the children involved there; (2) the fact that the statutory disablement was based upon a status over which the children had no control; and (3) the likelihood that INS would, for a substantial number of such children, exercise its discretionary authority not to deport *(Plyler v Doe, supra,* pp 218-224).

A more fundamental distinction between the instant case and those alienage equal protection cases which petitioner relies upon is that the challenged discriminatory classification was made here in the context of administration of the State's correctional system and, more particularly, is related to administration of a program in which prisoners are temporarily released prior to serving their minimum terms of imprisonment. Implementation of such a program obviously is inextricably involved with the State's legitimate penological objectives of deterrence, incapacitation, rehabilitation and retribution *(see, Pell v Procunier,* 417 US 817, 822-823). The Supreme Court has held that, in general, equal protection challenges to correctional classifications are subject only to the least intrusive level of judicial review, namely, that there be a rational basis for treating discrete groups differently *(Jones v North Carolina Prisoners' Union,* 433 US 119, 134-136). It is noteworthy that *Jones* involved impairment of the fundamental right of freedom of association which, in other settings, would be subject to strict scrutiny. In *Jones* and in prisoners' cases challenging on due process grounds infringements of rights explicitly recognized by the US Constitution, the court refrained from imposing the burden on prison authorities to demonstrate a compelling necessity for their policies or practices, balanced legitimate State penological objectives against prisoners' interests, and accorded a degree of deference to the province and expert judgment of correctional authorities in enforcing such objectives *(see, Hudson v Palmer,* 468 US 517, 521–522; *Bell v Wolfish,* 441 US 520, 532; *Pell v Procunier, supra,* pp 822-823).*

---

* We do not consider *Lee v Washington* (390 US 333), which invalidated Alabama's statutory racial segregation of its prison system, as holding to

Applying the foregoing standards here, we have no doubt that the State has an important interest in seeing to it that the criminal judgments of its courts are fully executed and a similarly legitimate public safety concern regarding prisoners who are freed from full confinement during their sentences under a temporary release program. We are also of the view that correctional authorities could rationally conclude that alien inmates statutorily subject to deportation and under pending investigation for that purpose represent, as a class, a significantly greater risk of absconding than do citizen-inmates otherwise similarly situated. Thus, we have concluded that the disqualification of which petitioner complains did not deny him equal protection, either under the level of judicial review generally applicable to classifications by correctional authorities *(see, Jones v North Carolina Prisoners' Union,* 433 US 119, 134-136, *supra)* or any heightened, intermediate level of review which might be imposed because the classification here involved is partially based on alienage *(see, Plyler v Doe, supra).* Accordingly, Special Term's judgment should be reversed and the petition dismissed.

KANE, J. P., CASEY, WEISS and HARVEY, JJ., concur.

Judgment reversed, on the law, without costs, and petition dismissed.

---

the contrary. The *Lee* decision does not indicate the level of judicial scrutiny which was applied, ordered desegregation save "for the necessities of prison security and discipline" *(supra,* at p 334) and, of course, dealt with the classic case of invidious discrimination.