[No. 76948-6.    En Banc.]
Argued February 16, 2006.    Decided August 3, 2006.

THE STATE OF WASHINGTON, *Respondent*, v. SEMI OSMAN, *Petitioner*.

476

*Stephanie C. Cunningham*, for petitioner.

*Gerald A. Horne*, Prosecuting Attorney, and *Kathleen Proctor* and *P. Grace Kingman*, Deputies, for respondent.

¶1 FAIRHURST, J. — Semi Osman seeks review of a published Court of Appeals decision upholding the trial court's imposition of a standard range sentence. Osman claims that the trial court violated the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, the equal protection clause of the fourteenth amendment to the United States Constitution, and article I, section 12 of the Washington Constitution by denying his request for a sentence under the special sex offender sentencing alternative (SSOSA), former RCW 9.94A.120(8)(a) (2000), *recodified as* RCW 9.94A.670(4) by Laws of 2000, chapter 28, sections 5 and 20, based on his possible deportation. We affirm the Court of Appeals and hold that the trial court did not violate the SRA or Osman's equal protection rights.

## I. FACTS AND PROCEDURAL HISTORY

¶2 In November 2003, Osman pleaded guilty to three counts of incest in the second degree under RCW 9A.64-.020(2).[1] Osman was eligible for[2] and requested a SSOSA.[3]

¶3 The Pierce County Presentence Investigation/Intake Unit submitted a presentence investigation (PSI) report

---

[1] Osman was originally charged with three counts of first degree child molestation under RCW 9A.44.083 for engaging in sexual acts with his stepdaughter over a period of about one year. The State subsequently filed an amended information charging Osman with three counts of second degree incest.

[2] The presentence investigation report states that Osman was eligible for a SSOSA because this was his "first conviction for a sexual crime." Clerk's Papers (CP) at 31. At the time Osman committed his crimes, an offender was eligible for a SSOSA if he was convicted of second degree rape or another sex offense that was also a serious violent offense and if the offender had no prior convictions for a sex offense or another felony sex offense in Washington or any other state. Former RCW 9.94A.120(8)(a).

[3] A SSOSA is a special sentencing alternative that may be available for some people convicted of sex crimes who meet statutory criteria. CP at 31; former RCW 9.94A.120(8). Under former RCW 9.94A.120(8), a person who was given a SSOSA

recommending a standard range sentence. The report stated that certain risk factors warranted consideration of an exceptional sentence *above* the standard range, including lack of consistent employment, financial instability, marital instability, residential instability, excess idle or discretionary time, presence of criminal acquaintances, and a history of substance abuse. The report recommended against a SSOSA if Osman could be deported before he could receive treatment. However, it stated that if the defense could demonstrate "the non-possibility of deportation" and if Osman was amenable to treatment,[4] there were "no objections" to a SSOSA. Clerk's Papers (CP) at 31. The PSI report further stated that Osman could receive treatment through the Twin Rivers Corrections Center's treatment facility while serving a standard range sentence. The record indicates that an amenability evaluation was completed, and Osman was found amenable to treatment.

¶4 At the sentencing hearing, the State asked the court to impose a sentence at the high end of the standard range on each count to run concurrently, followed by 36 to 48 months of community custody on release. The State argued that if the court imposed a SSOSA, the United States Citizenship and Immigration Services (USCIS) would detain Osman after he completed his reduced sentence, but before treatment, and he would be subject to deportation proceedings. The State's primary concern was that if Osman was deported, he would not undergo treatment nor would he receive adequate punishment. The State also

---

could receive a sentence of up to six months in jail and treatment of up to three years in duration. *Id.*

[4] The PSI report stated that Osman was in the process of being examined to determine if he was amenable to treatment. CP at 31. In his sentencing memorandum, Osman stated that an examiner on the prosecutor's approved treatment provider list had found him amenable to treatment. *Id.* at 19. In determining whether an offender is amenable to treatment, the examiner was required to evaluate "[t]he defendant's version of the facts and the official version of the facts, the defendant's offense history, an assessment of problems in addition to alleged deviant behaviors, the offender's social and employment situation, and other evaluation measures used." Former RCW 9.94A.120(8)(a)(i).

argued that it had reduced the charges against Osman for the express purpose of avoiding a SSOSA.

¶5 Osman acknowledged that he was deportable but claimed it was unlikely that he would actually be deported.[5] Osman argued that he would be able to receive treatment when the USCIS released him from detention. Osman further argued that the *only* way he could receive treatment was if the court imposed a SSOSA because, as a deportable alien, he did not qualify for treatment while in prison, a claim directly contradicted by the PSI.

¶6 The trial court acknowledged that a SSOSA is generally appropriate if an offender is amenable to treatment. It expressed concern, however, about the possibility that Osman would receive neither treatment nor punishment if he were deported. After hearing the parties' arguments, the court denied Osman's request for a SSOSA and imposed a sentence at the low end of the standard range of 51 months for each count, to run concurrently, followed by 36 to 48 months of community custody on release.

¶7 Osman appealed his sentence to the Court of Appeals, arguing that the trial court violated the SRA and his equal protection rights by considering his status as a noncitizen in deciding whether to impose a SSOSA. The Court of Appeals affirmed, concluding that there was no SRA violation because the trial court considered Osman's possible deportation only in relation to whether it would "render a SSOSA sentence unworkable." *State v. Osman*, 126 Wn. App. 575, 581, 108 P.3d 1287 (2005). The court also concluded that there was no equal protection violation because the trial court based its decision only on whether "the purposes of SSOSA would have been achieved" in Osman's case and not on Osman's "noncitizen or possible deportation status." *Id.* at 583. It found that the trial court considered Osman's alienage only with respect to his "ability to remain

---

[5] The record indicates that Osman is a natural citizen of Sierra Leone, but deportation to that country would place him in danger. Osman has a British passport, but because he is only a British national, the United States cannot deport him to the United Kingdom.

in the country to complete the treatment portion of SSOSA." *Id.* Osman petitioned this court for review, which we granted. *State v. Osman*, 155 Wn.2d 1021, 126 P.3d 1279 (2005).

## II. ISSUES

A.  Is the SRA violated if the trial court, when determining whether to grant a defendant's request for a SSOSA, considers the defendant's possible deportation?

B.  Are a defendant's equal protection rights violated if the trial court, when determining whether to grant a defendant's request for a SSOSA, considers the defendant's possible deportation?

## III. ANALYSIS

A. The SRA

¶8  Osman contends that the trial court did not follow the procedures or terms of the SRA in imposing a standard range sentence rather than a SSOSA by improperly basing its denial of a SSOSA on Osman's alienage status. The State argues that a defendant can only appeal a standard range sentence under the SRA if the trial court has failed to follow *procedural* requirements of the SRA. It contends that because the trial court has discretion to consider subjective factors such as the risk posed to the community, the court properly considered the possibility that Osman might not receive adequate treatment or punishment if he was deported.

¶9  Trial courts must generally impose sentences within the standard range. *State v. Law*, 154 Wn.2d 85, 94, 110 P.3d 717 (2005). If an offender is eligible for and requests a SSOSA, however, the court must determine whether an alternative sentence is appropriate. Former

RCW 9.94A.120(8)(a).[6] In determining whether a SSOSA is appropriate, the court has discretion to order an examination of the offender to determine if he or she is amenable to treatment. *Id.* If the court orders an examination, the report of the examination *must* consider problems related to the offender, the offender's social and employment situation, the offender's amenability to treatment, and the effect that the offender's early release could have on the community. *Id.* The SRA requires courts to apply sentencing guidelines equally to all offenders without "discrimination as to any element that does not relate to the crime or the previous record of the defendant." RCW 9.94A.340.

¶10 Generally, a defendant cannot appeal a sentence within the standard range; however, the prohibition is not absolute. RCW 9.94A.585(1); *State v. Garcia-Martinez*, 88 Wn. App. 322, 329, 944 P.2d 1104 (1997). A defendant may appeal a standard range sentence if the sentencing court

---

[6] The amended information states that Osman committed the three offenses with which he was charged on June 1, June 3, and June 5, 2001. The legislature recodified the SRA as of July 1, 2001. Laws of 2000, ch. 28, § 46. The State erroneously cites to the current version of SSOSA, RCW 9.94A.670(3), as authority for its arguments. However, because the legislature did not make any substantive changes in the language when it recodified the statute, the State's arguments are not affected by this error.

Former RCW 9.94A.120(8)(a) stated, in pertinent part:

(i) . . . [The] *sentencing court, on its own motion or the motion of the state or the defendant, may* order an examination to determine whether the defendant is amenable to treatment.

The report of the examination shall include at a minimum the following: The defendant's version of the facts and the official version of the facts, the defendant's offense history, an assessment of problems in addition to alleged deviant behaviors, the offender's social and employment situation, and other evaluation measures used. The report shall set forth the sources of the evaluator's information.

The examiner shall assess and report regarding the defendant's amenability to treatment and relative risk to the community. . . .

. . . .

(ii) After receipt of the reports, the court shall consider whether the offender and the community will benefit from the use of this special sex offender sentencing alternative and consider the victim's opinion whether the offender should receive a treatment disposition under this subsection. If the court determines that this special sex offender sentencing alternative is appropriate, the court shall then impose a sentence within the standard sentence range.

(Emphasis added.)

failed to comply with procedural requirements of the SRA or constitutional requirements.[7] *State v. Mail*, 121 Wn.2d 707, 711-13, 854 P.2d 1042 (1993); *State v. Onefrey*, 119 Wn.2d 572, 574, 835 P.2d 213 (1992); *State v. Herzog*, 112 Wn.2d 419, 423, 771 P.2d 739 (1989); *State v. McNeair*, 88 Wn. App. 331, 336, 944 P.2d 1099 (1997).

¶11 The decision to impose a SSOSA is entirely within the trial court's discretion. *Onefrey*, 119 Wn.2d at 575. A court abuses its discretion if it categorically refuses to impose a particular sentence or if it denies a sentencing request on an impermissible basis. *State v. Khanteechit*, 101 Wn. App. 137, 139, 5 P.3d 727 (2000). Neither Washington case law nor RCW 9.94A.340 specifies alienage or deportability as an impermissible basis for denial of a SSOSA.[8] The court may consider such subjective factors as problems related to a particular offender, the offender's social situation, and the impact on the community when imposing a sentence under the SRA. Former RCW 9.94A.120(8)(a).

¶12 Here, the court considered the possible consequences of no treatment or inadequate punishment if Osman could be deported when released into the community after completing the incarceration portion of his SSOSA. The record supports the conclusion that the trial court based its denial of a SSOSA on the possibility that Osman might evade treatment and/or adequate punishment for his offenses, not merely his status as an alien. We hold the trial court did not violate the SRA when, in determining whether to give Osman a SSOSA or a standard range sentence, it considered the effect that Osman's possible deportation would have on his treatment and/or punishment.

---

[7] We discuss the constitutional question below.

[8] In interpreting RCW 9.94A.340, Washington courts have only specified the defendant's race, sex, or religion as impermissible bases for a court's denial of a nonstandard sentence. *Khanteechit*, 101 Wn. App. at 139-40 (denying an alternative sentence because the defendant had no intention of marrying a child, not because of the practice in the defendant's culture of adults marrying children); *Garcia-Martinez*, 88 Wn. App. at 330.

¶13 We conclude that the trial court did not fail to follow procedural requirements of the SRA. The trial court did not abuse its discretion by considering the impact that possible deportation would have on Osman's treatment and punishment. There was no violation of the SRA.

## B. Equal protection

¶14 Osman argues that the trial court violated his equal protection rights under the Fourteenth Amendment[9] and article I, section 12 of the Washington Constitution[10] by denying his request for a SSOSA based on his status as an alien.[11] Osman does not allege that the trial court's denial of a lower sentence violated a fundamental right, nor does he raise a facial challenge to the SRA. Osman argues only that the trial court unconstitutionally applied the SRA to him. Osman also argues that because he is a member of a suspect class, the court must apply strict scrutiny.[12]

¶15 The State counters that the trial court based its decision not to give a SSOSA on Osman's inability to receive adequate treatment or punishment and not on his status as an alien. The State urges us to apply the rational relationship test because it argues the court's decision was based solely on Osman's ability to receive treatment or adequate punishment. The State also argues that because this is an as applied challenge, Osman has the burden of showing that the State intentionally or purposefully discriminated against him, and Osman has not met that burden.

---

[9] Osman cites the following clause from the Fourteenth Amendment: " 'No State shall . . . deny to any person within its jurisdiction the equal protection of the laws.' " Pet. for Review at 6 n.3 (quoting U.S. Const. amend. XIV, § 1).

[10] Article I, section 12 states: "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations."

[11] We have held that the equal protection clause of the Fourteenth Amendment and article I, section 12 are substantially identical and subject to the same analysis. *State v. Shawn P.*, 122 Wn.2d 553, 559-60, 859 P.2d 1220 (1993).

[12] Because the Court of Appeals concluded that the trial court did not base its decision on Osman's status as an alien, it did not decide whether Osman is a member of a suspect class. *Osman*, 126 Wn. App. at 583.

■■ ¶16 When evaluating an equal protection claim, we must first determine whether the individual claiming the violation is similarly situated with other persons. *State v. Handley*, 115 Wn.2d 275, 289, 796 P.2d 1266 (1990). A defendant must establish that he received disparate treatment because of membership in a class of similarly situated individuals and that the disparate treatment was the result of intentional or purposeful discrimination. *Id.* at 290. Although equal protection does not require that the State treat all persons identically, any classification must be relevant to the purpose for the disparate treatment. *In re Det. of Thorell*, 149 Wn.2d 724, 745, 72 P.3d 708 (2003) (citing *Baxstrom v. Herold,* 383 U.S. 107, 111, 86 S. Ct. 760, 15 L. Ed. 2d 620 (1966)). Depending on the type of classification or right determines which of three tests we apply. *State v. Smith*, 117 Wn.2d 263, 277, 814 P.2d 652 (1991). We apply strict scrutiny if the individual is a member of a suspect class or the state action threatens a fundamental right. *State v. Shawn P.*, 122 Wn.2d 553, 560, 859 P.2d 1220 (1993). We apply intermediate scrutiny if the individual is a member of a "semisuspect" class or the state action threatens "important" rights. *Id.* If the state action does not threaten a fundamental or "important" right, or if the individual is not a member of a suspect or semisuspect class, we apply a rational relationship or rational basis test. *Id.*

■■ ¶17 The Fourteenth Amendment "entitles both citizens and aliens to the equal protection of the laws of the State in which they reside." *Graham v. Richardson*, 403 U.S. 365, 371, 91 S. Ct. 1848, 29 L. Ed. 2d 534 (1971); *Hsieh v. Civil Serv. Comm'n*, 79 Wn.2d 529, 531-32, 488 P.2d 515 (1971). State action violates equal protection rights if it separates individuals into discrete classes based on citizenship and subjects those individuals who are not citizens to disparate treatment. *Graham*, 403 U.S. at 371, 377. A classification based on an individual's status as an alien is "inherently suspect and subject to close judicial scrutiny." *Id.* at 372.

¶18 Although we generally subject restraints on the rights of aliens to strict scrutiny, courts have placed some

limits on their equal protection rights. *Foley v. Connelie*, 435 U.S. 291, 294, 98 S. Ct. 1067, 55 L. Ed. 2d 287 (1978). Courts subject state action to strict scrutiny if it excludes aliens, as a class, from education benefits and the ability to practice a licensed profession. *Id.* at 295. However, courts have applied rational basis when reviewing state action relating to the right to vote, running for elective office, holding important nonelective positions, or working as a police officer. *Id.* at 296-98. In addition, classifications *among* aliens are generally subject to the less stringent rational basis review. *Mathews v. Diaz*, 426 U.S. 67, 78-79, 96 S. Ct. 1883, 48 L. Ed. 2d 478 (1976) (recognizing that not all aliens are members of the same legal classification because "the class of aliens is itself a heterogeneous multitude of persons with a wide-ranging variety of ties to this country"); *Angulo-Dominguez v. Ashcroft*, 290 F.3d 1147, 1151 (9th Cir. 2002). Illegal aliens are not members of a suspect class and courts have consistently subjected restrictions of their rights to rational basis review. *Plyler v. Doe*, 457 U.S. 202, 219 n.19, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982).

¶19 To make his equal protection claim, Osman must first establish his classification by showing he was treated differently from others who were similarly situated. However, Osman does not explain with whom he is similarly situated. He claims the court treated him differently because he is an alien, but he has not shown how his treatment differs from treatment of others. He does not indicate whether his claim is based on different treatment as compared to a citizen or as compared to another alien, subject to deportation or not subject to deportation. A New York court held that deportable aliens do not constitute a suspect class and that the petitioner had no fundamental right to premature release from confinement. *Jimenez v. Coughlin*, 117 A.D.2d 1, 4-5, 501 N.Y.S.2d 539, 542 (1986) (citing *Jones v. N.C. Prisoners' Union, Inc.*, 433 U.S. 119, 134-36, 97 S. Ct. 2532, 53 L. Ed. 2d 629 (1977), which held that prisoners' constitutional rights are subject to some

limitations). Because Osman has not shown he is a member of a suspect class, we review his claim under the rational basis test.

¶20 Under the rational basis test, state action does not violate the equal protection clause if there is a rational relationship between the classification and a legitimate state interest. *Simpson v. State*, 26 Wn. App. 687, 693, 615 P.2d 1297 (1980). We will uphold State action unless "it rests on grounds wholly irrelevant to the achievement of legitimate state objectives." *Shawn P.*, 122 Wn.2d at 561; *Smith*, 117 Wn.2d at 277; *State v. Schaaf*, 109 Wn.2d 1, 17, 743 P.2d 240 (1987). Disparate treatment of those within and without a designated class rationally relates to achievement of the State's objective if there is *some basis in reality* for the distinction between the two classes and the distinction serves the purpose intended by the legislature. *Shawn P.*, 122 Wn.2d at 560-67 (statute mandating revocation of driver's license for juveniles found guilty of liquor law offenses served legislative purpose); *Schaaf*, 109 Wn.2d at 22 (statutory denial of jury trials to juveniles was rationally related to "unique aspects of the juvenile court system"); *cf. Simpson*, 26 Wn. App. at 694-95 (no rational basis for exempting use taxes on articles acquired in another state but not on articles acquired in a foreign country).

¶21 The SRA does not expressly prohibit imposition of a SSOSA if the defendant is an alien. Nor does it expressly prohibit a court from considering alienage or deportability when determining whether a SSOSA is appropriate in a particular case. The SRA gives courts discretion to consider various risk factors applicable to the defendant when imposing a sentence. Former RCW 9.94A.120(8)(a).

¶22 At least one Washington court has held that the State's interest in promulgating the SRA is not only legitimate—it is compelling. *Garcia-Martinez*, 88 Wn. App. at 327 (concluding that the purpose of replacing the prior determinate sentencing scheme with a standardized scheme to reduce disparity among sentences is compelling). The

*Garcia-Martinez* court also concluded that it is rational to deny an exceptional sentence below the standard range if the defendant's request is legally or factually insupportable. *Id.* Additionally, federal courts have concluded that the government may treat deportable aliens differently with regard to sentencing programs under the rational basis test. *See, e.g., Lizarraga-Lopez v. United States*, 89 F. Supp. 2d 1166, 1169 (S.D. Cal. 2000).

¶23 Here, the court denied Osman's request for a sentencing alternative out of concern that Osman would not be able to comply with the requirements of a SSOSA and, as a result, would not receive treatment and would receive a lower-than-warranted sentence. That decision was rationally related to the SRA's goal of ensuring standardized sentencing and did not violate his right to equal protection under the law.[13]

¶24 In addition, because Osman raises only an as applied challenge, he has the burden of showing that the trial court intentionally discriminated against him. However, the trial court stated only that it was denying Osman's request for a SSOSA because Osman's circumstances could prevent him from complying with the SSOSA treatment requirements. Osman did not meet his burden.

¶25 We hold that Osman has not shown he is a member of a suspect class and the court's denial of a SSOSA was rationally related to the goals of the SRA. The court did not violate Osman's equal protection rights.

---

[13] Even if we were to conclude that Osman is a member of a suspect class, the trial court's action would meet strict scrutiny. Under strict scrutiny review, we uphold State action if it is necessary to achieve a compelling state interest. *Smith*, 117 Wn.2d at 277. As noted, *Garcia-Martinez* concluded that the State's interest in promulgating a standardized sentencing scheme is compelling. In addition, this court has repeatedly affirmed that the State's interest in protecting society from sexual predators is compelling. *See, e.g., In re Det. of Turay*, 139 Wn.2d 379, 410, 986 P.2d 790 (1999); *In re Det. of Campbell*, 139 Wn.2d 341, 348, 986 P.2d 771 (1999); *In re Pers. Restraint of Young*, 122 Wn.2d 1, 27, 857 P.2d 989 (1993). The trial court appropriately advanced that interest by imposing a sentence that conformed to SRA requirements and by imposing punishment commensurate with Osman's offense.

## IV. CONCLUSION

¶26 We affirm the Court of Appeals and hold that the trial court did not violate the SRA. The trial court did not abuse its discretion by considering the effect possible deportation would have on Osman's treatment and punishment. There was no violation of the SRA. The trial court also did not violate Osman's equal protection rights. Osman is not a member of a suspect class, and the trial court's denial of a SSOSA was rationally related to the goals of the SRA.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, OWENS, and J.M. JOHNSON, JJ., concur.