# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  48134-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| MATTHEW L. WELLINGTON, | |
| Appellant. | |

BJORGEN, C.J. — Matthew Wellington appeals his sentence of 131 months to life.  He argues that the trial court abused its discretion by declining to impose a special sex offender sentencing alternative (SSOSA).  We hold that the trial court's decision not to impose a SSOSA is supported by the application of the proper legal standard to the facts of this case.  Accordingly, we affirm Wellington's sentence.

## FACTS

Matthew Wellington pled guilty to two counts of rape of a child in the first degree.  At sentencing, Wellington requested a SSOSA in lieu of a standard range sentence.  The State and

the victim, JN-PS,[1] through her mother opposed a SSOSA. The victim's mother testified at

sentencing, discussing the effect that the incident had on her family and asking the judge not to

impose a SSOSA. The trial court declined to impose a SSOSA, based on the magnitude of the

harm inflicted upon the victim, the relative sophistication of Wellington's preparation and

execution of his crimes, Wellington's relatively high intelligence, and the fact that Wellington

had repeated sexual contact with the victim.

The trial court explained:

> As was set [sic] at the beginning, this is a life sentence for this child, quite honestly. The impact is huge.

> It's a life sentence for Mr. Wellington as well. I recognize that he is, by Mr. Comte's evaluation, he would meet the amenability [sic] to a SSOSA disposition, but I compare this case to the case that I heard previously today with a teenager who's involved in some minimal touching, no penetration, no level of sophistication, and I look at what Mr. Wellington did, which involves multiple acts that were increasing contact, ending up in actual what's admitted to penile penetration; buying sex toys, using them on this six- or seven-year-old child. I'm sorry. I just don't see him as an appropriate candidate for a SSOSA sentence.

> I think if you look at this case, if an outsider looked at this, they would say what was the judge thinking, how would they give this man the ability to stay out in the community after doing multiple rapes upon a child he proclaims love for. [sic] That didn't happen just on one occasion or a couple. It was a period of at least ten episodes that were I think outlined in the report, and they did involve a significant level of sophistication.

> There is discussion in the victim's statement about the security device being disabled or the internet not working, not being able to see what was going on in the home. The child reported being taken to a room when grandma was sleeping and the acts occurring [sic] during that time.

> I think Mr. Wellington, he is tested out [sic] at a high [intelligence quotient], but if you look at his sexual history, there's a long history of aberrant sexual activities, including viewing child pornography for a number of years, excessive masturbation, contact with animals, all of that occurring throughout a period of time prior to his entry into the military and some of the behavior in terms of the viewing

---

[1] We refer to the victim in this case by her initials to protect her privacy.

of pornography occurring [sic] up to I believe age 26, which was not that long ago for him. So it's been something that has been a huge impact upon him.

He doesn't have a prior sex history. I think he does have the ability to change, but the bottom line is balancing the community safety issue, his potential risk to other young victims, his potential risk to other women he would come into contact with that have children of their own, which is a fairly common pattern that I have seen over the years. The fact that the victim strongly opposes this. [sic]

I would point out the presentence writer did not have contact with the victim's mother and that's noted in the presentence investigation; that the phone they have been given [sic] they were not able to reach [the victim's mother] during that time period, and so I am required to give considerable weight and consider the victim's fear in this case. I think if you watched [the victim's mother] as she stood up here, there was a physical manifestation of fear that is still there and trauma is still evident. I think under these circumstances, evaluating the risk to the community, whether this is too lenient a sentence to receive a SSOSA, I think that, coupled with the multiple acts of a sophisticated nature and the victim's wishes, make him in my mind not an appropriate candidate for a SSOSA.

Report of Proceedings (RP) (Sept. 4, 2015) at 38-40.

The court imposed a sentence of 131 months to life in addition to lifetime community custody and forbad contact with the victim. Wellington appeals.

ANALYSIS

A.     Standard of Review

We review a trial court's denial of treatment through a SSOSA for an abuse of discretion. *State v. Onefrey*, 119 Wn.2d 572, 575, 835 P.2d 213 (1992). A trial court abuses its discretion if its decision is manifestly unreasonable, or is exercised on untenable grounds or for untenable reasons. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). A decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported by the record or was reached by applying the wrong legal standard. *Id*. A decision is manifestly unreasonable if the court, despite applying the correct legal standard to the supported facts, reaches an outcome that is outside the range of acceptable choices, such that no reasonable person could arrive at that

outcome. *Id*. A court also abuses its discretion if it categorically refuses to impose a particular sentence or if it denies a sentencing request on an impermissible basis. *State v. Osman*, 157 Wn.2d 474, 482, 139 P.3d 334 (2006).

B.    SSOSA

Wellington argues that the trial court abused its discretion because it denied the SSOSA based on "its apparent emotional response to the victim's mother." Br. of Appellant at 5. We disagree.

Trial courts must generally impose sentences within the standard range. *Osman*, 157 Wn.2d at 480. However, if an offender is eligible for and requests a SSOSA, the court must decide whether that alternative is appropriate. *Id*. at 480-81 (interpreting former RCW 9.94A.120(8)(a) (2001))[2]. The decision to impose a SSOSA "is entirely within the trial court's discretion." *Onefrey*, 119 Wn.2d at 575. In determining whether the SSOSA is appropriate, the trial court must consider several factors, including:

> [W]hether the offender and the community will benefit from use of [SSOSA], . . . whether the [SSOSA] is too lenient in light of the extent and circumstances of the offense, . . . whether the offender has victims in addition to the victim of the offense, . . . whether the offender is amenable to treatment, . . . the risk the offender would present to the community, to the victim, or to persons of similar age and circumstances as the victim, and . . . the victim's opinion whether the offender should receive a treatment disposition.

RCW 9.94A.670(4). A trial court must "give great weight to the victim's opinion whether the offender should receive a [SSOSA]." *Id*. We have held that the trial court may also consider factors beyond those included in the SSOSA statute in determining whether a SSOSA is appropriate. *State v. Osman*, 126 Wn. App. 575, 581, 108 P.3d 1287 (2005).

---

[2] Recodified as RCW 9.94A.505, LAWS OF 2001, ch. 10, § 6. The subsequent revision and recodification has not altered the substantive analysis as described in *Osman*.

Wellington asserts that the trial court's decision to not impose a SSOSA was based on untenable grounds because a SSOSA was the "best chance of protection," for the community, given that the presentence investigation report (PSI)[3] indicated he had a low reoffender risk and the Department of Corrections did not oppose a SSOSA. Br. of Appellant at 5. Wellington further suggests that the trial court abused its discretion by indulging in an emotional response to the victim's mother's testimony, relying on the court's statement: "[T]his is a life sentence for this child, quite honestly. The impact is huge. It's a life sentence for Mr. Wellington as well." RP (Sept. 4, 2015) at 38.

We considered a similar argument in the unpublished case of *State v. Beckwith*, where the defendant argued that the trial court abused its discretion in denying his SSOSA request by placing undue weight on the opinion of the victim's mother. No. 42147-0-II, 2012 WL 1203963, at *2-3. Although the defendant presented other evidence suggesting that a SSOSA would have been appropriate, we reasoned that "[t]he court properly considered all the facts and circumstances, including the PSI, the victim's family's opposition to SSOSA, and [the defendant's] letter to the court." *Id*. at *3. Additionally, the defendant in *Beckwith* argued that the trial court erred by "noting the lifelong impact of childhood sexual abuse," as part of its sentencing determination.[4] *Id*. We disagreed, explaining that "judges are expected to bring their

---

[3] Although the trial court ordered, and the trial court considered a presentence investigation report, the report is not included in the clerk's papers.

[4] At Beckwith's sentencing, the trial court judge recalled an experience from another case:
> I think one of the stories that I will never forget was we had a trial with questioning jury members and we were doing that privately if they had been involved in some type of sexual abuse in the past and we had a 78 year old woman who was being questioned and she had been abused as a young child by one of her relatives, sexually abused, and as she sat there and talked about it, there were tears flowing down her eyes so at 78 years old it still had an impact on this lady so there is no question that [the victim] is going to deal with this for the rest of her life.

*Beckwith*, No. 42147-0-II, 2012 WL 1203963, at *2 (alteration in original).

common sense to bear in making sentencing determinations," and holding that "the sentencing court properly considered the effect that childhood sexual abuse potentially has throughout a victim's lifetime." *Id.* As in *Beckwith*, the trial court in this case properly considered the testimony of the victim's mother in its decision whether to impose a SSOSA and appropriately noted the enduring harm the victim may struggle with as a result of Wellington's acts.

Apart from the victim's mother's testimony, the trial court identified several reasons why it determined a SSOSA would be inappropriate, such as the severity of harm, the fact that multiple incidents of sexual contact occurred, Wellington's relatively high intelligence, and his relatively sophisticated planning of his criminal acts. The trial court's reasoning is consistent with the SSOSA statutory directive to consider "whether the [SSOSA] is too lenient in light of the extent and circumstances of the offense." RCW 9.94A.670(4). Furthermore, the trial court noted that Wellington had "a long history of aberrant sexual activities, including viewing child pornography . . . [and] contact with animals," and expressed concern about his risk of reoffending. RP (Sept. 4, 2015) at 39-40. These observations are relevant to the SSOSA consideration of "the risk the offender would present to the community, to the victim, or to persons of similar age and circumstances as the victim." RCW 9.94A.670(4). As such, the trial court's decision to not impose a SSOSA was based on the perceived leniency of the SSOSA under the circumstances of this case and the defendant's risk of reoffending, in addition to the victim's mother's testimony.[5]

---

[5] "I think under these circumstances, evaluating the risk to the community, whether this is too lenient a sentence to receive a SSOSA, I think that, coupled with the multiple acts of a sophisticated nature and the victim's wishes, make him in my mind not an appropriate candidate for a SSOSA." RP (Sept. 4, 2015) at 40.

Although it may be debatable whether a SSOSA would be the best sentencing option for the community in the long term, the trial court made its decision using the correct legal standard as applied to the facts of this case, and its determination was not so outside the range of acceptable choices that no reasonable person could have made the same determination. Therefore, we hold that the trial court did not abuse its discretion by declining to impose a SSOSA in this case. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, C.J.

We concur:

JOHANSON, J.

MELNICK, J.