# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49232-6-II |
| Respondent, | |
| v. | |
| JORDAN WAYNE PITTMAN, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Jordan Wayne Pittman appeals his aggravated exceptional sentence of 167 months for first degree rape of a child and second degree possession of depictions of a minor engaged in sexually explicit conduct with sexual motivation. He argues that the sentencing court erred by (1) denying his request for a special sex offender sentencing alternative (SSOSA), (2) stating on the judgment and sentence that Pittman stipulated to an exceptional sentence, and (3) imposing a 12-month sentence enhancement on the possession conviction based on sexual motivation. We hold that the sentencing court did not abuse its discretion in denying Pittman's request for a SSOSA, but accept the State's concession regarding Pittman's other two assignments of error. We affirm the trial court's denial of a SSOSA but remand for correction of Pittman's judgment and sentence.

No. 49232-6-II

FACTS

A.    INCIDENT, CHARGES, AND TRIAL

Between January 1 and May 18, 2015, nineteen-year-old Pittman spent several weekends with his nieces, seven-year-old J.P.[1] and six-year-old R.P.  On one visit Pittman placed a "buzzy thing" on J.P.'s stomach and her bottom.  Clerk's Papers (CP) at 74.  He also placed it into J.P.'s anus.  R.P. witnessed Pitman place the device on her sister.

In May 2015, J.P. told her stepmother that Pittman had touched her private area.  J.P. also told the elementary school nursing assistant that she was not feeling well and asked if it was normal to have blood in her stool.  Later, J.P. told forensic interviewer Jeannie Belcoe that Pittman used a vibrating toy on her bottom and vaginal area once.  She reported that he pushed the vibrator into her bottom, it hurt, and later she wiped away a little blood.  In a second interview, J.P. told Belcoe that Pittman urinated in her mouth.

Pittman was arrested.  Officers searched Pittman's cellular phone and found pictures on the phone depicting his nieces' genital areas and bottoms, with and without underwear.

The State charged Pittman with two counts of first degree rape of a child, first degree child molestation, and second degree possession of depictions of a minor engaged in sexually explicit conduct.  The State also gave notice of its intent to seek an exceptional sentence based on use of position of trust, multiple current offenses, and destructive and foreseeable impact on persons other

---

[1] Pursuant to General Order 2011-1, we use initials for minor witnesses in sex crime cases.  Gen. Order 2011-1 of Division II, *In Re The Use Of Initials Or Pseudonyms For Child Witnesses In Sex Crime Cases* (Wash. Ct. App.), http://ww.courts.wa.gov/appellate_trial_courts/.

2

than the victim. The State also alleged that the possession offense was committed with sexual motivation. The case proceeded to a bench trial.

The trial court found Pittman guilty of only one count of first degree rape of a child and second degree possession of depictions of a minor engaged in sexually explicit conduct. The trial court also found that Pittman committed the possession offense with sexual motivation and that he used his position of trust to facilitate the offenses.

B.     SENTENCING

Prior to sentencing, the Department of Corrections (DOC) conducted a pre-sentence investigation (PSI). The PSI report concluded that "Pittman has not accepted total responsibility for his criminal behavior" and that he "was hesitant to talk about or take responsibility for physically injuring JP." CP at 45. The PSI report also concluded that Pittman does not have "any strong connection to the community." CP at 46. DOC recommended an exceptional sentence.

Thomas Carey, a sex offender treatment provider, conducted a psychosexual evaluation and provided the sentencing court with his report. Carey reported that Pittman was sexually abused as a child and that Pittman wanted to participate in sex offender treatment. Assessments showed that Pittman had a low to moderate risk for recidivism. Carey opined that Pittman's risk level could be further reduced through community-based sex offender treatment and DOC supervision. But Carey considered Pittman a "marginal candidate" for treatment based on the fact that he did not have a positive supportive environment and was unemployed. CP at 68.

At sentencing, Pittman requested a SSOSA. Defense counsel argued Pittman was a good candidate for a SSOSA based on his age and that the quality of treatment available in the

community was of much higher quality than the sex offender treatment available in prison. Counsel also argued that Pittman had admitted his behavior and taken responsibility for it.

J.P. provided a letter to the sentencing court stating that she "hate[d]" Pittman. 1 Verbatim Report of Proceedings (VRP) at 101. J.P. and R.P.'s father and stepmother both asked the sentencing court to not impose a SSOSA sentence. The girls' stepmother stated, "I believe a lengthy sentence is in order. No SSOSA, no special services. Is that a fair trade for a ruined life of a little girl? Probably not, but definitely called for." 1 VRP at 100. The girls' father expressed his opinion that Pittman does not deserve a SSOSA.

The sentencing court declined to impose a SSOSA, stating that it "listened carefully" to what the victim and the victim's family stated and the court agreed that Pittman was selfish and betrayed the girls' trust of their uncle. 1 VRP at 114. The sentencing court also stated that the PSI and Carey "both indicated that Mr. Pittman would be a marginal candidate, at best" for a SSOSA. 1 VRP at 116.

The sentencing court continued, "Sex crimes, and the things—the thoughts and actions that lead up to those are deep-seated and deep-rooted. For a person to make changes and to go from that takes a lifetime of work." 1 VRP at 116. The sentencing court further stated, "I'm not convinced that the—the SSOSA is the right thing, so I'm not going to grant that. . . . I think that there's some deep-seated issues that even with the treatment I'm not sure would—be healing and curing of the issue." 1 VRP at 116-17. Finally, the court stated, "I think the best option at this point is to keep Mr. Pittman away from children and others for a significant period of time." 1 VRP at 117.

The sentencing court imposed the high end of the standard range of 155 months on the rape of a child conviction and 29 months on the possession conviction to run concurrently with the rape sentence plus a 12-month enhancement based on the sexual motivation finding, for a total of 167 months. On the judgment and sentence, the sentencing court checked the box that states, "The defendant and state stipulate that justice is best served by imposition of the exceptional sentence above the standard range and the court finds the exceptional sentence furthers and is consistent with the interests of justice and the purposes of the sentencing reform act." CP at 82.

Pittman appeals.

## ANALYSIS

A.    SSOSA

Pittman argues the trial court abused its discretion in denying his request for a SSOSA based on an impermissible basis. Specifically, Pittman points to the sentencing court's comments about his thoughts and actions being deep-seated. We disagree.

We review a sentencing court's denial of a SSOSA sentence for an abuse of discretion. *State v. Onefrey*, 119 Wn.2d 572, 575, 835 P.2d 213 (1992). A sentencing court abuses its discretion if its decision is manifestly unreasonable, or is exercised on untenable grounds or for untenable reasons. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). "A decision is based 'on untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." *Id.* (quoting *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995), *review denied*, 129 Wn.2d 1003 (1996)). A sentencing court also abuses its discretion if it categorically refuses to impose a particular sentence

5

or if it denies a sentencing request on an impermissible basis. *State v. Osman*, 157 Wn.2d 474, 482, 139 P.3d 334 (2006).

Sentencing courts must generally impose sentences within the standard range. *Id.* at 480. However, if an offender is eligible for and requests a SSOSA, the court must decide whether that alternative is appropriate. *Id.* at 480-81 (interpreting former RCW 9.94A.120(8)(a) (2001)). The decision to impose a SSOSA "is entirely within the trial court's discretion." *Onefrey*, 119 Wn.2d at 575. In determining whether the SSOSA is appropriate, the trial court must consider several factors, including:

> [(1)] . . . [W]hether the offender and the community will benefit from use of [the SSOSA],
> [(2)] . . . whether [a SSOSA] is too lenient in light of the extent and circumstances of the offense,
> [(3)] . . . whether the offender has victims in addition to the victim of the offense,
> [(4)] . . . whether the offender is amenable to treatment,
> [(5)] . . . the risk the offender would present to the community, to the victim, or to persons of similar age and circumstances as the victim, [and]
> [(6)] . . . the victim's opinion whether the offender should receive [a SSOSA].

RCW 9.94A.670(4). The sentencing court is not limited to these factors. *State v. Frazier*, 84 Wn. App. 752, 754, 930 P.2d 345, *review denied*, 132 Wn.2d 1007 (1997). Moreover, the sentencing court must give great weight to the victim's opinion whether the offender should receive a SSOSA. RCW 9.94A.670(4).

Here, the sentencing court stated that its sentencing decision was based on the victims' and their families' objection to a SSOSA; the conclusion in the PSI and Carey's report that Pittman was "a marginal candidate, at best" for a SSOSA; and that Pittman should be "away from children and others for a significant period of time." 1 VRP at 116-17. The sentencing court also added that "the thoughts and actions that lead up to those are deep-seated and deep-rooted" and that "even

with the treatment I'm not sure would—would be healing and curing of the issue." 1 VRP at 116-17. Contrary to Pittman's assertion, these final comments are permissible considerations about whether Pittman would be amendable to treatment.

Because the factors considered by the sentencing court in denying Pittman's request for a SSOSA are all set forth in RCW 9.94A.670(4), Pittman's argument that the sentencing court abused its discretion by relying on an impermissible reason for denying a SSOSA fails. The sentencing court did not err in denying Pittman's request for a SSOSA.

B.      Agreed Exceptional Sentence

Pittman next argues that the sentencing court erred by checking a box on the judgment and sentence stating that he agreed to an exceptional sentence. The State concedes the error. Because there is nothing in our record to show Pittman agreed to an exceptional sentence, we accept the State's concession.

A scrivener's error is a clerical mistake that, when amended, would correctly convey the trial court's intention, as expressed in the record at trial. *State v. Davis*, 160 Wn. App. 471, 478, 248 P.3d 121 (2011). The remedy for a scrivener's error in a judgment and sentence is to remand to the trial court for correction. *State v. Makekau*, 194 Wn. App. 407, 421, 378 P.3d 577 (2016). We, therefore, remand for correction of the judgment and sentence.

C.      Sexual Motivation

Pittman lastly argues that the sentencing court erred by imposing a 12-month sentence enhancement on his second degree possession of depictions of a minor engaged in sexually explicit conduct conviction because the State improperly filed a special allegation of sexual motivation. The State also concedes this error. We accept the State's concession.

No. 49232-6-II

Under RCW 9.94A.835(1), the State may not file a special allegation that a crime is sexually motivated to support a sentence enhancement if the crime is a sex offense. Possession of depictions of a minor engaged in sexually explicit conduct is a sex offense. RCW 9.94A.030(47)(a)(iii). A special allegation of sexual motivation, therefore, was improper in this case. Accordingly, we remand for correction of the judgment and sentence by striking the 12-month enhancement on the second degree possession of depictions of a minor engaged in sexually explicit conduct conviction. *See In re Pers. Restraint of Mayer*, 128 Wn. App. 694, 701-02, 117 P.3d 353 (2005) (citing CrR 7.8(a)) (mistakes in judgments, orders, or other parts of the record may be corrected by the court at any time).

We affirm the sentencing court's denial of a SSOSA, but we remand for correction of the judgment and sentence consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Worswick, P.J.

_____
Sutton, J.

8