# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  53671-4-II |
| Respondent, | |
| v. | |
| TIMOTHY JOSHUA GREEN, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J.—Following his *Alford*[1] plea to violation of a domestic violation no contact order, Timothy Joshua Green appeals his sentence and argues that the trial court abused its discretion by failing to consider his request for an exceptional sentence downward based on compulsion and incapacity to appreciate the wrongfulness of his conduct.  Green also argues that his defense counsel rendered ineffective assistance by failing to adequately argue for the downward sentence.  We disagree and affirm.

## FACTS

In September 2017, Christine Foley texted 911 around 3:00 a.m. to report that Green was outside of her residence in violation of a no contact order protecting her from him.  Foley told 911 that Green was in her shed in the back of her home.  When law enforcement arrived at Foley's residence, Green was in Foley's carport within 500 feet of the residence.  The State charged Green with violation of a court order with a special allegation of domestic violence.

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

The trial court ordered Green to undergo a competency evaluation. The competency evaluation concluded that Green met the diagnostic criteria for unspecified bipolar disorder, antisocial personality disorder, and substance use disorders. The evaluation concluded that Green had "the capacity to have a factual and rational understanding of his charges and court proceedings . . . [but lacked] the capacity to assist in his own defense with a reasonable degree of rational understanding." Clerk's Papers (CP) at 42. The trial court found Green incompetent to proceed and entered a competency restoration order. After restoration, the trial court entered an order finding Green competent to proceed to trial.

In September 2018, Green entered an *Alford* plea of guilty to violation of a court order—domestic violence.[2] The State recommended a standard range sentence of 60 months. Green requested an exceptional downward sentence of 18 months. In support of the exceptional downward sentence, defense counsel argued mitigating factors under RCW 9.94A.535(1)(a), (c), and (e). Defense counsel argued that Green suffered from severe mental health issues, contending that Green had no memory of the incident and was not taking his medication at the time. Defense counsel also argued that Foley was an initiator and that Green committed the crime under compulsion insufficient to constitute a complete defense but which significantly affected his conduct.

Green addressed the trial court, recalling a difficult childhood and significant struggles with his mental health during adulthood. Green told the trial court that he had no recollection of committing the crime. After hearing argument from both parties, the trial court reserved ruling

---

[2] In lieu of making a factual statement himself, Green agreed that the trial court could review the police reports and the statement of probable cause supplied by the State to establish a factual basis for the plea.

on sentencing, stated it wanted to look into the statute, and encouraged defense counsel to submit briefing on the issue.

Defense counsel filed a sentencing memorandum reiterating his argument that an exceptional sentence was appropriate because (1) the protected party "was an initiator, willing participant, aggressor, or provoker of the incident," (2) Green committed the crime under compulsion insufficient to support a complete defense, and (3) Green's "capacity to appreciate the wrongfulness of [his] conduct . . . was significantly impaired." CP at 109-10 (emphasis omitted) (citing RCW 9.94A.535(1)(a), (c), (e)). As to mitigating factors (c) and (e), the memorandum argued:

> Mr. Green has stated that he has no recollection of this incident (see Dr. [Brett C.] Trowbridge's attached evaluation). Further, [Green's mother] has stated that Mr. Green had not been taking his prescribed medication in the time leading up to this incident and was increasingly worried about his behavior and what it might lead to. And, per Officer [Jeff Schaefer's] report, Ms. Foley stated that Mr. Green was "acting strange."

CP at 111. Defense counsel also relayed Green's mother's recollection that Foley had contacted her twice in the week leading up to the incident attempting to get in contact with Green.

In support of Green's request for an exceptional downward sentence, defense counsel attached a copy of an evaluation completed by Dr. Trowbridge, a psychologist, to the sentencing memorandum. Dr. Trowbridge conducted an evaluation of Green and concluded that Green did not show evidence of serious mental illness such that he would not have been capable of knowing he was violating the no contact order at the time. Dr. Trowbridge acknowledged that Green "does have some documented mental health history." CP at 150. Dr. Trowbridge's diagnostic impression was that Green has bipolar disorder.

3

No. 53671-4-II

At a hearing in March 2019, the trial court stated that it had reviewed the materials submitted by defense counsel. The trial court focused on Green's argument that Foley had been the initiator. Green argued that Foley was a willing participant for a time and "[t]here was no affirmative ceasing of being a willing participant." Verbatim Report of Proceedings (VRP) (Mar. 14, 2019) at 17. He pointed to Green's mother's recollection that Foley contacted her twice in the week leading up to the incident attempting to reach Green. The trial court commented:

> [A]ccording to the [police] report, I see this as really two contacts. He calls her. She says, okay, I'll talk with you. And then he called her three times. So finally she says, okay, I'll meet with you. So he was acting strange.
> So she goes back in the home. And an hour and a half later, he shows up and rings her doorbell.
> So, you know if the incident ended when she walked back in the home, then I'm on board with your theory, I think.
> But the incident didn't. An hour and a half later, he's back at her house ringing her doorbell, which I don't think is an invited contact.
> So that's my problem, is that I think—he calls her three times. You know, I don't know that—he calls her three times. Hard to say why she decided to meet with him. That's kind of speculative. But she does. Okay. Maybe she's a willing participant at that point.
> But then when she disengages an hour and a half later and he shows up at her house, I don't see that as being—her being a willful participant. At that point, it's 4:30 in the morning and he's at her house ringing her doorbell.

VRP (Mar. 14, 2019) at 19-20.

Defense counsel responded:

> Here is where we go toward[] the compulsion and the ability to understand the wrongfulness of his conduct. I will say some crimes are much more hardwired into human DNA [(deoxyribonucleic acid)] than others. Don't steal. Don't hit people. Don't kill. You know, we know those are wrong.
> Not having contact with somebody, that's not an innate evil. And given his mental health problems, I think he didn't really understand the wrongfulness.

4

VRP (Mar. 14, 2019) at 20-21. The trial court responded that Dr. Trowbridge's report did not support the argument that Green did not understand the wrongfulness of his actions. Defense counsel conceded that Dr. Trowbridge did not say Green was incapable of understanding.

Green addressed the trial court and explained that he did not remember going to meet Foley because he was under the influence and was off his medications at the time. "I had no idea being in my psychosis what was really going on at that time, plain and simple." VRP (Mar. 14, 2019) at 23. The trial court stated that it did not believe the record favored defense counsel's request for an exceptional downward sentence but offered the opportunity to subpoena Foley to present additional evidence.

The parties reconvened on April 1, 2019. At the outset of the hearing, the trial court stated that Green "is seeking an exceptional downward sentence under RCW 9.94A.535(1)(a), indicating that, to a significant degree, the victim was an initiator, willing participator, aggressor, or provoked the incident." VRP (Apr. 1, 2019) at 2. Defense counsel informed the trial court that he had spoken with Foley and would not be calling her as a witness. The trial court found that insufficient evidence supported a finding that Foley was a willing participant to a significant degree and denied Green's request for an exceptional downward sentence. The trial court stated:

> I don't like the sentence. Easy for me to say. I'm not the one doing the time. Sixty months is a boatload of time, but that's—your issue is with the legislature. I don't really have discretion here because of your criminal history. I have to impose the 60 months unless I were to make the finding of the mitigating circumstances, and I just don't have sufficient evidence for that.

VRP (Apr. 1, 2019) at 13-14. Defense counsel did not mention the mitigating factors of compulsion or Green's mental health issues. When addressing the trial court himself, Green reminded the court that he suffers from mental health issues and asked if there was any kind of

treatment that he could receive. The trial court acknowledged Green's mental health issues and encouraged Green to take advantage of whatever is available to him while incarcerated.

Green appeals his sentence.

## ANALYSIS

### I. ABUSE OF DISCRETION

Green argues that the trial court abused its discretion by not considering his request for an exceptional downward sentence based on compulsion and underlying mental health issues. We disagree.

A standard range sentence cannot normally be appealed. RCW 9.94A.585; *State v. Osman*, 157 Wn.2d 474, 481, 139 P.3d 334 (2006). "However, a defendant may appeal the process by which a trial court imposes a sentence." *In re Pers. Restraint of Marshall*, 10 Wn. App. 2d 626, 635, 455 P.3d 1163 (2019) (emphasis omitted). By challenging the process, a defendant challenges the trial court's refusal to exercise its discretion or the legal conclusions and determinations that form the basis of the court's refusal to impose an exceptional sentence. *Marshall*, 10 Wn. App. 2d at 635; *State v. Ramos*, 187 Wn.2d 420, 433, 387 P.3d 650 (2017). "While no defendant is entitled to an exceptional sentence below the standard range, every defendant is entitled to ask the trial court to consider such a sentence and to have the alternative actually considered." *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005) (emphasis omitted).

Under RCW 9.94A.535, a court may impose a sentence outside the standard sentence range for an offense if it finds "that there are substantial and compelling reasons justifying an exceptional sentence." Possible mitigating factors include, "To a significant degree, the victim

6

was an initiator, willing participant, aggressor, or provoker of the incident;" "[t]he defendant committed the crime under duress, coercion, threat, or compulsion insufficient to constitute a complete defense but which significantly affected his or her conduct;" and "[t]he defendant's capacity to appreciate the wrongfulness of his or her conduct, or to conform his or her conduct to the requirements of the law, was significantly impaired." RCW 9.9A.535(1)(a), (c), (e).

Green contends that the trial court only considered the issue of whether Foley was an initiator or willing participant in the offense and completely failed to consider the second and third mitigation factors—compulsion and incapacity to appreciate the wrongfulness of his conduct—offered by the defense. But the record does not support Green's contention. Although the trial court focused on whether Foley was an initiator at the third sentencing hearing, the record shows that the trial court had reviewed the written sentencing memorandum from defense counsel in which all three mitigating factors were raised. Additionally, the trial court addressed Green's argument regarding compulsion and his capacity to understand the wrongfulness of his conduct at the second sentencing hearing, stating that Dr. Trowbridge's report did not support Green's argument on those bases.

The record does not reflect that the trial court categorically refused to consider an exceptional sentence downward. Rather, the record shows the trial court considered Green's request for an exceptional downward sentence over the course of three separate hearings and reviewed defense counsel's written sentencing memorandum, but it ultimately concluded that a downward sentence was not appropriate under the circumstances. We hold that the trial court did not abuse its discretion.

II. INEFFECTIVE ASSISTANCE OF COUNSEL

Green argues, in the alternative, that he received ineffective assistance of counsel due to counsel's failure to "continue to press" the argument for an exceptional sentence downward based on compulsion and underlying mental health issues. Br. of Appellant 14. We disagree.

Ineffective assistance of counsel is a two-pronged inquiry. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To prevail on an ineffective assistance of counsel claim, a defendant must show that defense counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. A failure to prove either prong ends our inquiry. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

There is a strong presumption that defense counsel's conduct was not deficient. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Because of this presumption, "the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." *McFarland*, 127 Wn.2d at 336. There is no ineffective assistance when counsel's complained of actions are trial tactics. *Grier*, 171 Wn.2d at 33.

Contrary to Green's suggestion on appeal, defense counsel did not solely focus on the victim-as-initiator mitigating factor in his argument to the trial court or fail to argue facts supporting the other factors. Defense counsel repeatedly referenced Green's mental health issues during the first two sentencing hearings, pointing out that Green was allegedly off of his medications at the time and relaying Green's mother's concerns that Green's mental health was deteriorating. Defense counsel also provided the trial court with Dr. Trowbridge's report, which

found that Green had a history of mental health issues and that he presented with bipolar disorder.

Defense counsel's decision to focus on the victim-as-initiator mitigating factor at the third sentencing hearing was a reasonable trial tactic. Although defense counsel raised all three mitigating factors in his sentencing memorandum and at the first two sentencing hearings, the record shows that the trial court found Green's argument regarding compulsion and inability to appreciate the wrongfulness of his conduct unconvincing. The trial court appeared to consider the victim-as-initiator factor to be a closer call, and it was reasonable for defense counsel to focus his argument on that factor as a result. Reasonable trial tactics cannot form the basis of an ineffective assistance of counsel claim. Because defense counsel's actions constituted reasonable trial tactics, we hold that Green's ineffective assistance of counsel claim fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Lee, C.J.

_____
Glasgow, J.

9