# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50129-5-II |
| Respondent, | |
| v. | |
| MICHAEL WILLIAMS, II, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Michael Williams, II appeals the standard range sentence imposed following his guilty plea to human trafficking in the second degree. Williams contends the State breached the parties' plea agreement and the sentencing court violated the real facts doctrine. We affirm.

## FACTS

### I.    PLEA AGREEMENT

The State originally charged Williams with two counts of human trafficking in the first degree, one count of kidnapping in the first degree, two counts of promoting commercial sexual abuse of a minor, and one count of promoting prostitution in the second degree. The offenses involved multiple minor victims. Williams was almost 23 years old when the offenses occurred. Following plea negotiations, Williams agreed to plead guilty to one count of human trafficking in the second degree with the aggravating factor that "any victim was a minor at the time of the offense." Clerk's Papers (CP) at 234.

In the plea agreement, Williams stated that he "provided transport and hotel accommodations on 12/8/14 knowing the transport and hotel would be used for commercial sex transactions. I acted with reckless disregard as to the ages of the participants in the commercial sex activity, two of whom were under the age of 18. I also expected to benefit financially from the prostitution as a participant in the venture." CP at 244.

The State agreed to recommend a standard range sentence to the sentencing court and agreed that "defense may argue for exceptional sentence downward." CP at 239. Williams's standard range sentence was 129 to 171 months.

Williams then submitted a brief requesting an exceptional sentence below the standard range, arguing his sentence would be longer than sentences imposed on others engaging in similar activity, the victims were willing participants, and Williams's youth.

II.    SENTENCING HEARING

At the sentencing hearing, the prosecutor stated that it was "beyond appalling" that Williams alleged the victims were the aggressors, 3 Report of Proceedings (RP) at 74, and urged the sentencing court not to "fall into the ridiculous argument defense is trying to make that these two girls are the initiators, aggressors." 3 RP at 96. The prosecutor also stated it was "preposterous" that a "22-, maybe 23-year-old man, who is married, who has a child, is the victim of [the minor girls]." 3 RP at 98.

Seattle Police Department Detective Maurice Washington testified under oath in response to Williams's argument that the victims were willing participants. The prosecutor explained the need for Washington's testimony stating, "The State has to stick to what is called the real-facts doctrine. I'm aware of that. The defense has put in, however . . . a 19-page brief with . . . factual allegations, about these two girls." 3 RP at 74.

Washington provided a general description of human trafficking and his understanding of victims in general, how and why they end up in this type of situation, and the use of control and manipulation to keep them from getting out. Williams did not object to Washington's testimony.

The prosecutor requested a sentence of 171 months, the high end of the standard range. The prosecutor argued:

> I do want to emphasize that I think [one of the victims] is afraid. Why wouldn't she be, you know, of [Williams] right here, of who [he] represent[s], of [his] attitude here today, of not taking responsibility, of not being contrite and remorseful about what [he] did. Her fears, I'm confident, come from a long, long time ago when she was very, very young, and the court and defense understand what I'm talking about, and they continue. Why wouldn't they continue? The court knows what's happened throughout the pendency of this case, but she is here. That says a lot, too, I think. I want the court to acknowledge -- I know that the court has—her presence here today. She does support the State's recommendation, which is going to be high end.

3 RP at 96. The prosecutor then stated that prostitution "is a culture" and discussed some of the acts that "guys are requesting" from "the girls" and that "these strange men" pay the girls "to do these things to them." 3 RP at 97. The prosecutor continued:

> I want to emphasize to [the victims] . . . . Sorry. I have known them both for now two to three years. This is going to take me a second, but it is going to be quick when I finally get around to saying it. They are not broken. Nothing is wrong with them. They are both beautiful. They are both smart.

3 RP at 98. Williams did not object to the prosecutor's statements.

Williams then argued for an exceptional sentence below the standard range. He emphasized his age and immaturity, that the sentences of defendants in other cases who were convicted of the same offense were lower, and that the victims were willing participants. The prosecutor responded stating, "I'm objecting to this." 3 RP at 121. "These girls . . . they are not out there getting anything, Judge, other than . . . raped every day. They are underage . . . . [Williams

3

was] the accomplice to the rape . . . an accomplice to Rape Child III." 3 RP at 131-32. Williams did not object.

The prosecutor also argued:

> The initial charge was based on the kidnapping theory, and there was a kidnapping count.
>       In fact, the facts were pretty close. They don't give you the e-mails that [one of the victims] sent out talking about not being able to leave, needing somebody to get her, and she can't, they won't let her. They don't talk about the fact that their phones were taken from them, so they are not communicating . . . . They don't talk about the Gucci belt that was used to beat them with. They don't talk about any of those things.
>       . . . .
> They don't show you the text messages where [one of the victims] says, I'm going to kill myself.
>       . . . .
> [T]hey took them to the mall to cash out, which means they allowed them to buy something with the money that they made having sex with these men. How nice of them to allow them to have a little bit. They will hold the money and pay for it, but they allowed them to go to the mall one day and actually buy something for themselves, and I'm sure that it was lingerie.

3 RP at 129-30. Williams did not object.

The prosecutor also stated that it would be inconsistent for the minors to be willing participants when the victim's age is "a statutory aggravator factor" to human trafficking in the second degree. 3 RP at 135.

Williams addressed the court in support of his request for an exceptional sentence below the standard range stating, "I treated them like they were adults because that's what I thought that they were." 3 RP at 148. He continued:

> I should have cared, but, honestly, I didn't. I didn't care . . . . Who am I to judge if a girl wants to do that? I know girls that do that.
>       . . . .
>       Yes, I participated. I knew what was going, yes . . . but I can't beat the fact that they are under 18. Everybody knows it. This is just a little bit of people in the room. Imagine if there was a trial. Twelve people, bing, bing, bing. Raped, sodomized. I'm going to lose, period, and I'm not stupid.

3 RP at 148, 150.

The sentencing court imposed a standard range sentence of 150 months. Williams appeals.

ANALYSIS

I.      BREACH OF PLEA AGREEMENT

Williams argues that the State breached the parties' plea agreement by implicitly advocating for an exceptional sentence above the standard range and arguing against Williams's request for an exceptional sentence below the standard range. We disagree.

Whether a breach of a plea agreement has occurred is a question of law we review de novo. *State v. Neisler*, 191 Wn. App. 259, 265, 361 P.3d 278 (2015), *review denied*, 185 Wn.2d 1026 (2016). A defendant may raise the issue of a prosecutor's breach of a plea agreement for the first time on appeal. *State v. Xaviar*, 117 Wn. App. 196, 199, 69 P.3d 901 (2003). Because a defendant gives up important constitutional rights by agreeing to a plea bargain, due process considerations come into play. *State v. Sledge*, 133 Wn.2d 828, 839, 947 P.2d 1199 (1997). "Due process requires a prosecutor to adhere to the terms of the agreement." *Sledge*, 133 Wn.2d at 839. In determining whether a prosecutor has breached a plea agreement's terms, we review the sentencing record as a whole using an objective standard. *State v. Carreno-Maldonado*, 135 Wn. App. 77, 83, 143 P.3d 343 (2006). "When the prosecutor breaches a plea agreement, the appropriate remedy is to remand for the defendant to choose whether to withdraw the guilty plea or specifically enforce the State's agreement." *State v. Jerde*, 93 Wn. App. 774, 782-83, 970 P.2d 781 (1999).

Williams argues that the State breached the plea agreement by arguing for an exceptional sentence above the standard range and undermining Williams's argument for an exceptional sentence below the standard range. The record, however, shows differently.

First, Williams agreed to plead guilty to one count of human trafficking in the second degree, with the aggravating factor that the victims were minors. While the parties discussed this aggravator during the sentencing hearing, it was in response to Williams's argument regarding mitigating factors. Moreover, the prosecutor never argued for an exceptional sentence above the standard range; instead he argued for a standard range sentence as agreed to in the plea agreement.

Second, per the plea agreement, Williams could argue for an exceptional sentence below the standard range. Nowhere in the plea agreement did the prosecutor agree to support an exceptional sentence. A prosecutor does not breach a plea agreement by participating in a sentencing hearing. *State v. Talley*, 134 Wn.2d 176, 178, 949 P.2d 358 (1998). The prosecutor was free to advocate for a standard range sentence, as agreed to in the plea agreement, and was not required to join Williams's request for an exceptional sentence. The prosecutor's comments were part of that advocacy.

Because the prosecutor adhered to the terms of the parties' plea agreement, Williams fails to show that a breach of the agreement occurred.

II.      REAL FACTS DOCTRINE

Williams next argues that the sentencing court violated the real facts doctrine by considering facts relevant to an uncharged crime, by considering facts outside what Williams acknowledged, and by not conducting an evidentiary hearing. The State counters that Williams cannot raise these arguments because he received a standard range sentence and he did not object below. We agree with the State.

Generally, sentences within the standard sentence range are not appealable. RCW 9.94A.585(1); *State v. Osman*, 157 Wn.2d 474, 481, 139 P.3d 334 (2006). The sentencing court has discretion to sentence a defendant within the sentence range, and so long as the sentence falls

within the standard sentence range, there can be no abuse of discretion as to the sentence's length. RCW 9.94A.530(1); *State v. Williams*, 149 Wn.2d 143, 146-47, 65 P.3d 1214 (2003). A defendant may appeal a standard range sentence only if the sentencing court failed to comply with the procedural requirements of the Sentencing Reform Act of 1981, chapter 9.94A RCW, or constitutional requirements. *Osman*, 157 Wn.2d at 481-82.

Williams argues that his standard range sentence is appealable because the sentencing court committed a procedural error by violating the real facts doctrine. The real facts doctrine, RCW 9.94A.530(2), provides in part, "In determining any sentence other than a sentence above the standard range, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing, or proven pursuant to RCW 9.94A.537." RCW 9.94A.530(2) further states, "Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point."

But to be entitled to raise a real facts doctrine issue on appeal, Williams must first show that he raised a "timely and specific objection" to the sentencing court's consideration of the allegedly improper information. *State v. Grayson*, 154 Wn.2d 333, 338-39, 111 P.3d 1183 (2005). Moreover, defendants who receive a standard range sentence must object to unproven assertions of fact presented at sentencing to preserve error under the real facts doctrine. *State v. Mail*, 121 Wn.2d 707, 711-12, 854 P.2d 1042 (1993). Williams fails to make this showing.

Williams argues that the real facts doctrine was violated based on the prosecutor's arguments during the sentencing hearing, including the prosecutor's statement that Williams was an accomplice to rape, the prosecutor knew the victims for two to three years, there was a prostitution culture where certain acts were requested, Williams was originally charged with

kidnapping, the victims were treated poorly, and Williams's attitude of not taking responsibility. Williams did not raise a single objection during the sentencing hearing.

Williams appears to argue that his request for an exceptional sentence below the standard range amounts to an umbrella objection to anything argued to the contrary. But this argument is incorrect. There must be a "timely and specific objection" to the sentencing court's consideration of the allegedly improper information as required in *Grayson*, 154 Wn.2d at 338-39. Moreover, defendants who receive a standard range sentence must object to unproven assertions of fact presented at sentencing to preserve error under the real facts doctrine. *Mail*, 121 Wn.2d at 711-12. Given Williams's failure to raise a specific and timely objection, we decline to address the challenge to his standard range sentence further.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Maxa, C.J.

_____
Lee, J.