# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  58161-2-II<br>(Consol. with<br>No.  58165-5-II) |
| Respondent, | |
| v. | |
| SIMONE RENEE NELSON, | PUBLISHED OPINION |
| Appellant. | |

LEE, J. — Simone R. Nelson appeals the trial court's denial of their CrR 7.8 motion, filed pursuant to *State v. Blake*,[1] seeking reimbursement for community service work they performed in lieu of paying legal financial obligations (LFOs).  Nelson argues the trial court erred by denying their motion, and that the denial violated their substantive due process and equal protection rights.

We hold that the trial court did not err in denying Nelson's CrR 7.8 motion.  Also, Nelson fails to show a violation of their substantive due process or equal protection rights.  Therefore, Nelson's constitutional claims fail.  Accordingly, we affirm.

## FACTS

### A.    CONVICTIONS AND LFOS

In 1995, Nelson pleaded guilty to one count of unlawful possession of a controlled substance.  Nelson was sentenced to 52 days of confinement with credit for 52 days served and 24

---

[1]  197 Wn.2d 170, 481 P.3d 521 (2021).

months of community supervision. The trial court also imposed $1,467.90 in legal financial obligations (LFOs): a $100 victim assessment fee, $242.90 in court costs, $1,000 to the drug enforcement fund, and a $125 crime lab fee.

Nelson's 1995 judgment and sentence included boilerplate language indicating Nelson "has the ability or likely future ability to pay" LFOs, but also provided that "[f]inancial obligations except court costs and victim assessment can be converted to community service hours." Clerk's Papers (CP) (58161-2-II) at 38, 40. Nelson's 1995 judgment and sentence was subsequently modified in 1997 and 1998 due to probation violations. However, neither order modified Nelson's LFOs.

In 1998, Nelson pleaded guilty to one count of unlawful possession of a controlled substance. Nelson was sentenced to 60 days of confinement, with 30 days converted to 240 hours of community service, and 12 months of community supervision. The trial court also imposed $1,210 in LFOs: a $500 victim assessment fee, $110 in court costs, $500 in court appointed attorney fees, and a $100 crime lab fee. Nelson's 1998 judgment and sentence again included boilerplate language indicating Nelson "has the ability or likely future ability to pay" LFOs. CP (58165-5-II) at 31. The 1998 judgment and sentence also included language that Nelson "has the means to pay for the cost of incarceration and is ordered to pay such costs at the statutory rate." CP (58165-5-II) at 32.

In 2003, Nelson was placed on a "Pay or Appear Program," requiring Nelson to make $70 monthly payments towards satisfying their LFOs, with the amount split equally between the 1995 and 1998 judgment and sentences ($35 each). CP (58161-2-II) at 29; CP (58165-5-II) at 28.

About a month later, the superior court issued an order stating that Nelson had "performed 80 hrs of [community service work]. The clerk is directed to credit [Nelson] on each cause number the sum of $280.00." CP (58161-2-II) at 28. The record is unclear when and on what basis the trial court converted Nelson's LFOs imposed in the 1998 judgment and sentence to community service hours. Nelson maintains that the court modified the payment terms because of Nelson's indigency based on RCW 10.01.160. However, there is no record of a trial court finding Nelson indigent nor is there a motion by Nelson seeking to convert her LFOs to community service work.

In 2007, Nelson again appeared in superior court, and the court issued an order requiring Nelson to make $80 monthly LFO payments, with the 1995 and 1998 judgment and sentences each credited with $20.[2]

B. *BLAKE* AND MOTION TO VACATE

In 2021, our Supreme Court decided *Blake*, striking down Washington's felony drug possession law, RCW 69.50.4013, as unconstitutional. 197 Wn.2d at 195. Following *Blake*, Nelson filed a CrR 7.8 motion seeking to have their 1995 and 1998 felony drug possession convictions vacated, and to be reimbursed for money paid and community service hours worked in satisfaction of the *Blake* LFOs.[3] The State conceded that Nelson's convictions should be vacated and that Nelson should be reimbursed for cash payments made towards the *Blake* LFOs, but the

---

[2] The remaining $40 was split between two unrelated judgment and sentences.

[3] We use the term "*Blake* LFOs" to refer to the legal financial obligations stemming from Nelson's vacated unlawful possession of a controlled substance convictions.

State opposed reimbursement "for any community service work performed in lieu of [LFOs]." CP (58161-2-II) at 23; CP (58165-5-II) at 23.

The trial court partially granted Nelson's motion, ordering that Nelson's convictions be vacated and that Nelson be reimbursed $1,910.00 for cash payments made towards the *Blake* LFOs. However, the trial court denied Nelson's request for reimbursement of community service work. The trial court explained that Nelson's request was premised on a theory of unjust enrichment and that while Nelson was entitled to a refund for money actually paid in satisfaction of the judgment, the community service work did not confer a benefit on the State.

Nelson appeals.[4]

## ANALYSIS

### A. NO SUBSTANTIVE DUE PROCESS VIOLATION

Nelson argues that the trial court violated their substantive due process rights when the court denied monetary compensation for community service work performed in lieu of paying LFOs. We disagree.

#### 1. Legal Principles

The United States Constitution and the Washington Constitution both protect against the deprivation of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1; WASH. CONST. art. I, § 3. Federal and state due process claims are subject to the same standards. *Yim v. City of Seattle*, 194 Wn.2d 682, 686, 451 P.3d 694 (2019). We review

---

[4] Nelson appealed the trial court's ruling in both the 1995 and 1998 cases. The State moved to consolidate Nelson's two appeals, which we granted.

substantive due process challenges de novo. *In re Adoption of K.M.T.*, 195 Wn. App. 548, 559, 381 P.3d 1210 (2016), *review denied*, 187 Wn.2d 1010 (2017).

The guarantee of due process includes a substantive component "which forbids the government to infringe certain 'fundamental' liberty interests *at all*." *Reno v. Flores*, 507 U.S. 292, 302, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993) (emphasis in original); *see also Yim*, 194 Wn.2d at 688-89 ("[T]he substantive component of due process 'protects against arbitrary and capricious government action even when the decision to take action is pursuant to constitutionally adequate procedures.'" (quoting *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 218-19, 143 P.3d 571 (2006), *cert. denied*, 549 U.S. 1282 (2007))).

A person making a substantive due process claim "must first show that the State deprived [them] of a constitutionally protected liberty or property interest." *Johnson v. Dep't of Fish and Wildlife*, 175 Wn. App. 765, 774, 305 P.3d 1130, *review denied*, 179 Wn.2d 1006 (2013). Once a protected interest has been identified, the level of scrutiny we apply to the State's action depends on whether the affected interest or right is fundamental. *Yim*, 194 Wn.2d at 689; *Johnson*, 175 Wn. App. at 775. When the State interferes with a fundamental right, we apply strict scrutiny, "which 'requires that the infringement is narrowly tailored to serve a compelling state interest.'" *Yim*, 194 Wn.2d at 689 (quoting *Amunrud*, 158 Wn.2d at 220). State interference with a nonfundamental right is subject to rational basis review, requiring only a rational relationship between the challenged action and a legitimate State interest. *Yim*, 194 Wn.2d at 693-94; *Johnson*, 175 Wn. App. at 775.

2.    No Constitutionally Protected Interest in Community Service Work

Here, Nelson argues that they have "a fundamental right to full restoration" because their convictions were reversed. Br. of Appellant at 5. The State responds that there is no "substantive due process right to receive monetary compensation for [community service work] performed in lieu of payment of LFOs." Br. of Resp't at 14. We agree with the State.

To support their argument, Nelson cites to *Nelson v. Colorado*, 581 U.S. 128, 137 S. Ct. 1249, 197 L. Ed. 2d 611 (2017). In *Nelson*, the United States Supreme Court addressed a procedural due process challenge to a Colorado law allowing defendants to seek reimbursement of fees paid pursuant to overturned convictions. 581 U.S. at 133-34. The Court applied the *Mathews v. Eldridge*[5] test. *Id.* at 135. In addressing the private interests affected by the Colorado law, the Court explained that the petitioners "have an obvious interest in regaining the money they paid to Colorado" because once their "convictions were erased, the presumption of innocence was restored." *Id.* The Court characterized the presumption of innocence as "'[a]xiomatic and elementary'" to the "'foundation of our criminal law.'" *Id.* at 135, 136 (quoting *Coffin v. United States*, 156 U.S. 432, 453, 15 S. Ct. 394, 39 L. Ed. 481 (1895)). As for Colorado's interest in the money, the Court explained that the State "has no interest in withholding from [petitioners] money to which the State currently has zero claim of right." *Id.* at 139. The Court ultimately concluded that the Colorado law was procedurally deficient under the *Mathews* test. *Id.*

Preliminarily, we note that *Nelson* was a procedural, not substantive, due process case, and is readily distinguishable on that ground alone as Nelson raises a substantive due process

---

[5]  424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

challenge. Also, the Court in *Nelson* did not explicitly analyze whether petitioners had a constitutionally protected interest at stake; rather, the Court simply assumed, without referencing either federal or state law, that defendants who have convictions reversed have a right to repayment of any monies paid because of those convictions. *See Nelson*, 581 U.S. at 149 (Thomas, J., dissenting). Nelson seems to acknowledge this by arguing that *Nelson* implicitly recognized defendants have a constitutionally protected interest in money paid pursuant to an overturned conviction and attempts to broaden the interest to encompass the community service work or labor Nelson expended in lieu of cash. *See* Br. of Appellant at 7 ("Although *Nelson* primarily concerns procedural obstacles interfering with an innocent person's right to reimbursement, the opinion rests on a foundational principle: Due process obligates states 'to refund fees, court costs, and restitution exacted from [the] defendant' when their conviction is invalidated. . . . [*Nelson*'s] reasoning . . . applies equally to labor." (quoting *Nelson*, 581 U.S. at 130)). However, to the extent *Nelson* recognized a constitutionally protected interest in money paid pursuant to a reversed conviction, the interest would be limited to money actually *paid* and would not extend to community service work performed in lieu of payment. *See Nelson*, 581 U.S. at 135 ("[Petitioners] have an obvious interest in regaining the *money they paid* to Colorado." (Emphasis added.)).

Traditionally, "'[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.' These fields likely represent the outer bounds of substantive due process protection." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 n.4 (9th Cir. 1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 272, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994)). Community service work performed in lieu

of paying LFOs does not readily fit into any of these categories. Furthermore, Nelson fails to cite any authority recognizing repayment for community service work in lieu of paying LFOs as a protected property interest. *See DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

We decline to recognize a fundamental right to repayment of money for community service performed in lieu of paying LFOs. As Division One has cautioned, substantive due process protections should be expanded "in very limited circumstances 'because guideposts for responsible decisionmaking in this uncharted area are scarce and open-ended.'" *Aji P. v. State*, 16 Wn. App. 2d 177, 200, 480 P.3d 438 (internal quotation marks omitted) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997)), *review denied*, 198 Wn.2d 1025 (2021). Because a court that "extend[s] constitutional protection to an asserted right or liberty interest . . . place[s] the matter outside the arena of public debate and legislative action," courts should "'exercise the utmost care' . . . lest the liberty protected by the Due Process Claus be subtly transformed into the policy preferences of the [judiciary]." *Glucksberg*, 521 U.S. at 720 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992)). We refrain from recognizing a fundamental right to restoration under either the federal or state due process clauses.

Nelson fails to show a "constitutionally protected liberty or property interest" in the community service work performed in lieu of paying LFOs. *Johnson*, 175 Wn. App. at 774. Therefore, Nelson's substantive due process claim fails.

B. NO EQUAL PROTECTION VIOLATION

Nelson argues that the trial court violated their right to equal protection by treating them differently than other defendants with *Blake* LFOs on the basis of their purported indigency. We disagree.

1. Legal Principles

The equal protection clause of the Fourteenth Amendment of the United States Constitution guarantees that "persons similarly situated with respect to the legitimate purpose of the law receive like treatment." *Harmon v. McNutt*, 91 Wn.2d 126, 130, 587 P.2d 537 (1978). We review constitutional challenges de novo. *State v. Shultz*, 138 Wn.2d 638, 643, 980 P.2d 1265 (1999), *cert. denied*, 529 U.S. 1066 (2000).

In addressing equal protection claims, we first determine whether the individual bringing the claim is situated similarly to other persons. *State v. Osman*, 157 Wn.2d 474, 484, 139 P.3d 334 (2006). The individual bringing the claim bears the burden of establishing that they were treated disparately because they belong to a class of similarly situated people, and that intentional or purposeful discrimination drove the disparate treatment. *Id.*

The level of scrutiny applied depends on the type of classification or right at issue. *Id.* This court applies

> strict scrutiny if the individual is a member of a suspect class or the state action threatens a fundamental right. We apply intermediate scrutiny if the individual is

a member of a 'semisuspect' class or the state action threatens 'important' rights. If the state action does not threaten a fundamental or 'important' right, or if the individual is not a member of a suspect or semisuspect class, we apply a rational relationship or rational basis test.

*Id.* (internal citations omitted) (quoting *State v. Shawn P.*, 122 Wn.2d 553, 560, 859 P.2d 1220 (1993)); *see also State v. Hirschfelder*, 170 Wn.2d 536, 550, 242 P.3d 876 (2010) ("Absent a fundamental right or suspect class, or an important right or semisuspect class, a law will receive rational basis review.").[6]

### 2. Similarly Situated Classification

Nelson argues that they are "similarly situated to others who incurred *Blake* LFOs" and that they were treated disparately because of their alleged indigence. Br. of Appellant at 13. In other words, Nelson asserts that they satisfied their *Blake* LFOs through community service work because they were indigent, so the trial court's denial of their request to be reimbursed for that community service work was due to their indigency, but other *Blake* defendants who satisfied their LFOs with cash payments were made more whole by virtue of wealth. We disagree.

Nelson contends that, pursuant to RCW 10.01.160(4), they were allowed to perform community service in lieu of paying LFOs. The State also alleges that the conversion of LFOs to community service work occurred pursuant to RCW 10.01.160(4). However, the record does not

---

[6] We note that *Hirschfelder* also stated, "'Intermediate scrutiny applies only if the statute implicates both an important right and a semisuspect class not accountable for its status.'" 170 Wn.2d at 550 (internal quotation marks omitted) (quoting *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 608, 192 P.3d 306 (2008)). Regardless of whether the standard for intermediate scrutiny requires the implication of an important right or semisupsect class as stated in *Osman,* 157 Wn.2d at 484, or the implication of an important right and a semisuspect class as stated in *Hirschfelder*, 170 Wn.2d at 550, Nelson fails to meet either standard.

show what authority the trial court relied on when it converted Nelson's LFOs to community service work.

Even if we accept the unsupported allegation, RCW 10.01.160(4) allows defendants who have "been ordered to pay costs" to "petition the sentencing court for remission of the payment of costs or of any unpaid portion thereof," and empowers the sentencing court, if satisfied that payment poses a "manifest hardship" to the defendant, to "modify the method of payment." Thus, the plain language of the statute allowing for community service in lieu of paying LFOs does not hinge on indigency. Rather, one who is able to show "manifest hardship" may petition the sentencing court to allow remission of the payment or allow community service in lieu of payment. RCW 10.01.160(4). While indigency can be a basis for "manifest hardship," it is not the exclusive basis for a finding of "manifest hardship." *Id.*[7]

Here, there is nothing in the record to show that only indigent defendants have had their LFOs converted to community service due to "manifest hardship." RCW 10.01.160(4). The record also does not support Nelson's argument that the determination of whether a *Blake* defendant will be reimbursed for their community service work turns on their wealth. There is no record that the trial court found Nelson indigent at the time the court allowed Nelson to perform community service in lieu of paying LFOs nor does the record show that the trial court found Nelson indigent at the time the court credited the community service performed towards partial

_____

[7] The statute expressly uses "manifest hardship" rather than "indigency" as the basis for allowing a petition to remit costs. RCW 10.01.160(4). The two terms are not interchangeable; thus, the plain language of the statute does not support "indigency" as the exclusive means of showing manifest hardship.

payment of LFOs. Similarly, Nelson provides no support for their argument that only indigent persons performed community service in lieu of paying LFOs. It is a reasonable proposition that some non-indigent people were allowed to satisfy their *Blake* LFOs through community service work and that some indigent people were able to satisfy all their *Blake* LFOs with cash payments. Indeed, the record shows that Nelson satisfied a portion of their LFOs with cash payments even after performing some community service. Thus, Nelson fails to show that the trial court classified Nelson "according to their financial resources." *In re Pers. Restraint of Runyan*, 121 Wn.2d 432, 448, 853 P.2d 424 (1993).

### 3. Level of Scrutiny

As discussed above, Nelson fails to show that only indigent defendants had their LFOs converted to community service hours. However, even if we assume a general class of defendants who had their LFO's converted to community service hours, Nelson fails to show an equal protection violation.

#### a. Applicable level of scrutiny

The level of scrutiny depends on the characterization of the right involved. When a fundamental right or a suspect class is involved, we apply a heightened level of scrutiny. *Osman*, 157 Wn.2d at 484. If an important right or a semisuspect class is involved, we apply an intermediate level of scrutiny. *Id*. If there is no fundamental or important right or suspect or semisuspect class involved, we apply a rational basis test. *Id*.

With regard to a fundamental right, Nelson merely states that "the right of a person to seek reimbursement for payments made toward LFOs after their conviction has been vacated . . . is

fundamental" and cites to *Coffin* and *Nelson*. Br. of Appellant at 12. Nelson's reliance on quotations from *Coffin* are unavailing. *Coffin* involved a challenge to charges in a federal indictment, and the full sentence from which Nelson extracts certain phrases states, "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." 156 U.S. at 453. We do not quibble with *Coffin*'s statement; however, the quoted statement fails to support the notion that being reimbursed for community service performed in lieu of monetarily paying LFOs is a fundamental right. Nelson's reliance on *Nelson* is also unavailing as the *Nelson* court never recognized such a fundamental right. Nelson provides no other authority recognizing such a right. *See DeHeer*, 60 Wn.2d at 126.

Similarly, Nelson provides no argument that an important right is implicated. While Nelson argues the application of intermediate scrutiny for an important right, Nelson merely assumes an important right is involved and fails to provide argument or authority on how being reimbursed for community service performed in lieu of monetarily paying LFOs is an important right such that intermediate scrutiny applies. *See id.*

Nelson argues that disparate treatment based on wealth affects a suspect class and classifications based on poverty are semisuspect, relying on *In re Personal Restraint of Mota*.[8] In *Mota*, the court addressed whether equal protection is violated when "the good-time credit provisions treat those who are unable to obtain pretrial release differently from those who serve the entire sentence either in county jail or in a state institution." 114 Wn.2d at 473. Our Supreme

---

[8] 114 Wn.2d 465, 788 P.2d 538 (1990).

Court stated that "[a] higher level of scrutiny is applied to cases involving a deprivation of a liberty interest due to indigency." *Id.* at 474. However, Nelson has not established that they were deprived of a liberty interest. Moreover, as discussed above, Nelson has not established that any classification involved was based strictly on indigency. Therefore, a heightened scrutiny based on a suspect or semisuspect classification of poverty does not apply. Absent the showing of a suspect or semisuspect class, we do not apply heightened scrutiny or intermediate scrutiny.

Because Nelson has not shown that there is a threat to a fundamental or important right or that they are a member of a suspect or semisuspect class, we apply a rational relationship or rational basis test.[9]

b.      Rational basis test

In *Runyan*, our Supreme Court applied a rational basis review to RCW 10.73.090, the statute requiring that personal restraint petitions be filed within one year of a final judgment. 121 Wn.2d at 436, 449. The court concluded that the statute was rationally related to a legitimate state interest because it was "a reasonable means for controlling the flow of postconviction collateral relief petitions." *Id.* at 449. In other words, "[f]aced with a virtually unlimited universe of possible postconviction claims, the Legislature wisely chose to exempt those contentions which go to the very validity of the prisoner's continued incarceration." *Id.*

Limiting reimbursement to only those LFOs satisfied by monetary payments to the State is a similarly rational means of determining and controlling the flow of reimbursement requests from

---

[9] As discussed above, even if a heightened level of scrutiny is applied, Nelson's equal protection claim would fail because they cannot show that they were "treated differently from others who were similarly situated." *Osman*, 157 Wn.2d at 485.

defendants who have had a conviction overturned pursuant to *Blake*. As Division One recently explained, "The rippling impacts of [the *Blake*] decision have yet to be fully realized, let alone resolved, and will not likely be for many years." *Civ. Survival Project v. State*, 24 Wn. App. 2d 564, 568, 520 P.3d 1066 (2022), *review denied*, 2 Wn.3d 1011 (2023). "[I]t is possible that more than 100,000 individuals were affected" by the *Blake* decision. *Id.* Faced with such a large number of potential claims for reimbursement, there is a rational relationship between providing reimbursement for LFO payments and limiting the flow of reimbursement claims only to those *Blake* defendants who satisfied their LFOs with definable monetary payments received by the State.

Nelson argues that "'[p]reservation of state funds is not in itself a sufficient basis to defeat an equal protection challenge.'" Br. of Appellant at 17 (alteration in original) (quoting *Willoughby v. Dep't of Lab. & Indus.*, 147 Wn.2d 725, 741, 57 P.3d 611 (2002), *abrogated on other grounds by Yim*, 194 Wn.2d at 704). But it is not mere solvency that justifies the State action here: limiting refunds to payments actually made to the State is a legitimate State interest because the State has benefited from the monetary payment made to the State. Conversely, the State derived no benefit from any community service performed in lieu of paying LFOs. From a commonsense standpoint, the State has a reasonable interest in only reimbursing LFOs it actually received; community service work performed in lieu of LFOs did not directly benefit the State, nor is community service in lieu of paying LFOs as easily quantifiable as Nelson suggests. Thus, the trial court's action survives rational basis review, and Nelson's equal protection claim fails.

The trial court did not, as Nelson argues, "[r]efund[] the wealthy and depriv[e] the poor." Br. of Appellant at 18. Rather, the trial court reimbursed monetary payments made to satisfy LFOs and denied reimbursement for community service work in lieu of paying LFOs.[10] Thus, Nelson's equal protection claim fails.

C.     CrR 7.8

Nelson argues that the trial court erred by denying their CrR 7.8 motion, and the State responds that a CrR 7.8 motion was not the appropriate mechanism by which to seek reimbursement for community service work. We disagree with both parties and hold that CrR 7.8 is the appropriate procedural means by which to seek reimbursement of *Blake* LFOs and that the trial court did not err by denying Nelson's CrR 7.8 motion.

1.      CrR 7.8 is the Appropriate Mechanism for Nelson's Request

The State argues that a CrR 7.8 motion to vacate is not the appropriate procedural mechanism by which to seek compensation for the community service work Nelson performed. We disagree.

In *Civil Survival Project*, plaintiffs argued that a civil class action was the proper means of seeking compensation for *Blake* LFOs. 24 Wn. App. 2d at 572. In addressing the plaintiff's argument, the court first recognized that "CrR 7.8 is the mechanism by which the superior courts provide for relief from a criminal judgment or order," but that the rule does not specify whether it

---

[10] Even if *Blake* defendants who paid their LFOs entirely through monetary payments may receive more reimbursement than defendants like Nelson who satisfied their LFOs through performing community service work, "'[t]he equal protection clause does not require a state to eliminate all inequalities between the rich and the poor.'" *Runyan*, 121 Wn.2d at 449 (alteration in original) (quoting *Riggins v. Rhay*, 75 Wn.2d 271, 283, 450 P.2d 806 (1969)).

is the exclusive means of doing so. *Id.* at 572, 574. The court then noted that "the Court of Appeals has repeatedly affirmed that provisions similar to CrR 7.8 but operative in courts of limited jurisdiction, rather than superior courts, are the exclusive means to remedy problems in criminal judgments that emerge from those courts." *Id.* at 574. The court pointed out that our Supreme Court, in *Williams v. City of Spokane*, 199 Wn.2d 236, 505 P.3d 91 (2022), affirmed the line of cases holding provisions similar to CrR 7.8 as the exclusive means to remedy issues in criminal judgments. *Id.* at 575.

Ultimately, the *Civil Survival Project* court explained that because the differences between the rules analyzed in the cited precedent and CrR 7.8 were "negligible," there was no basis to "read CrR 7.8 separately." *Id.* at 576. Accordingly, the court held that "CrR 7.8 is the exclusive procedural means by which to seek refund and cancellation of superior court imposed *Blake* LFOs." *Id.* at 578.

We adopt the reasoning in *Civil Survival Project* and hold that Nelson's motion was appropriately brought pursuant to CrR 7.8.[11]

2.      No Abuse of Discretion in Denying Nelson's CrR 7.8 Motion

Nelson argues that the trial court erred by characterizing their reimbursement request as a claim for damages.

---

[11] In its briefing, the State characterizes Nelson's request as a civil suit for damages and argues that sovereign immunity precludes Nelson from maintaining their action. We reject the State's argument because this is a criminal matter and there is no civil suit against the State.

We review the denial of a CrR 7.8 motion for an abuse of discretion. *State v. Robinson*, 193 Wn. App. 215, 217, 374 P.3d 175 (2016). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. *Id.* at 217-18.

Here, the trial court denied Nelson's CrR 7.8 motion for two reasons. *See* 1 Verbatim Rep. of Proc. (VRP) (Apr. 4, 2023) at 23 ("I'm constrained on two fronts here."). First, the trial court reasoned that Nelson's request for reimbursement for community service work was really a restitution or unjust enrichment claim. By denying the motion in part on that ground, the trial court implied that a CrR 7.8 motion was not the appropriate mechanism for what it characterized as Nelson's damages claim. However, as noted above, *Civil Survival Project*, decided before the trial court heard Nelson's motion, held that a CrR 7.8 motion is the exclusive procedural means by which to seek reimbursement of *Blake* LFOs. 24 Wn. App. 2d at 578. Thus, the trial court erred by suggesting Nelson could seek reimbursement through a civil claim for damages.

However, the trial court did not abuse its discretion in denying Nelson's motion because the denial of Nelson's motion was neither contrary to the law nor untenable. The trial court noted that "presently the trial courts have no guidance from the Court of Appeals as to whether we ought to approach differently the question of community service work performed in lieu of legal financial obligations." 1 VRP (Apr. 4, 2023) at 23. In the absence of such guidance, the trial court analogized to *State v. Hecht*, 2 Wn. App. 2d 359, 409 P.3d 1146, *review denied*, 190 Wn.2d 1024 (2018). explaining that while the facts between that case and Nelson's were different, the trial court was persuaded by *Hecht*'s reasoning.

In *Hecht*, a defendant whose conviction had been reversed brought a RAP 12.8 motion seeking restitution for LFOs paid pursuant to a reversed conviction and for "deterioration of emotional and physical health, and unwarranted community service and community supervision." 2 Wn. App. 2d at 361. Relying on the *Restatement of Restitution*, the court explained that "'[a] person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside.'" *Id.* at 367 (quoting RESTATEMENT OF RESTITUTION § 74, at 302-03). "The use of 'conferred a benefit' and reference to taken property suggests restitution concerns only the property transferred between the parties." *Id.* at 367. Then citing to *Nelson*, the court held that "[w]hen a criminal conviction is overturned by a reviewing court, the State is obliged to refund fees, court costs, and restitution exacted from the defendant as a consequence of that conviction," but nothing more. *Id.* at 368. Thus, the court concluded that Hecht "was entitled to restitution of the *money paid* in satisfaction of his now vacated judgment and sentence," but not for the "losses [he suffered] as consequences of his convictions" because "they were not *paid* in satisfaction of his judgment and the State was not unjustly enriched by them. Hecht's entitled restitution is the amount he paid, not the amount he claims to have lost as a result of his convictions." *Id.* (emphasis added).

While Nelson did not make a restitution or unjust enrichment claim under RAP 12.8, the reasoning articulated in *Hecht* is applicable. Here, like Hecht, Nelson's community service was not paid to the State in satisfaction of the imposed LFOs as no property was transferred by Nelson to the State in the performance of community service. And the State did not receive any benefit from Nelson's community service work. Nelson is only entitled to money *paid* in satisfaction of

19

the judgment and sentence. Thus, the trial court did not abuse its discretion when it denied Nelson's CrR 7.8 motion seeking reimbursement for community service hours performed in lieu of paying LFOs.

## CONCLUSION

Because the trial court did not err in denying Nelson's CrR 7.8 motion, and Nelson otherwise fails to show the denial violated their constitutional rights, we affirm the trial court.

Lee, J.

We concur:

Veljacic, A.C.J.

Price, J.