# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58839-1-II |
| Respondent, | |
| v. | |
| ROCKY SINDARS, | PUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Rocky Sindars was convicted of unlawful possession of methamphetamine in 2008. The trial court found that he had the ability or future ability to pay and ordered him to pay $4,274.61 in various legal financial obligations (LFOs). Sindars asked the court to permit him to satisfy a portion of his LFOs via community service. The court granted the request but did not find that he was indigent.

In 2021, the Washington Supreme Court held in *State v. Blake*[1] that Washington's strict liability drug possession statute[2] was void because it violated due process. Sindars then moved to vacate his conviction and for an LFO refund under CrR 7.8. He asked the court to refund the cash equivalent of the community service labor that he performed to satisfy his LFOs, in addition to refunding his cash payments. The court granted the motion in part, vacated his conviction, and

---

[1] 197 Wn.2d 170, 174, 481 P.3d 521 (2021).

[2] Former RCW 69.50.4013(1) (2017). We cite this version of the statute when referring to the court's decision in *Blake*.

ordered a refund of the cash he paid toward his LFOs, but declined to order reimbursement for Sindars' community service.

Sindars appeals the court's partial denial of his CrR 7.8 motion. He argues that refusing to reimburse him for his community service violated the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution, the privileges and immunities clause of the Washington Constitution, and the Thirteenth Amendment to the United States Constitution's prohibition against involuntary servitude. The State argues that we should not reach Sindars' challenges because they are barred by sovereign immunity and CrR 7.8 was not the proper avenue to seek relief. Although we disagree with the State's threshold arguments, we affirm because on this record, Sindars has not shown he is entitled to relief.

FACTS

I. BACKGROUND

In 2008, Sindars pleaded guilty to possession of methamphetamine under former RCW 69.50.4013(1) (2003). The trial court checked a box waiving one fine due to indigency, but otherwise found that Sindars "ha[d] the ability or likely future ability to pay" and ordered Sindars to pay $4,274.61 in LFOs. Clerk's Papers (CP) at 91-93.

In 2010, Sindars moved to terminate his LFOs on the grounds that the LFOs placed an undue burden on him as a result of his indigency. He submitted a financial affidavit stating that his sole income was Social Security due to his disabilities. The trial court denied this motion after a hearing that was not transcribed for our consideration. Instead, the court required total monthly payments of $30 and placed the LFOs on the pay or appear program.

In 2011, after a motion that is not in our record, the court ordered that Sindars "be allowed to perform community service work hours and they will be converted at minimum wage to be applied to defendant's legal financial obligations." CP at 76. The court then entered several orders converting community service work to LFO credit. None of these orders contained a finding of indigency or explained the basis for Sindars' motion or the rationale behind the court's rulings.

In total, the court applied $1,481.26 of community service credit toward the LFOs at issue in this appeal. Sindars also paid $641 in cash toward his LFOs.

## II. POST-*BLAKE* PROCEDURE

In 2021, the Washington Supreme Court held in *State v. Blake* that Washington's strict liability drug possession statute, former RCW 69.50.4013(1), violated due process. 197 Wn.2d at 174. Sindars moved to vacate his conviction under *Blake* and CrR 7.8(b)(4) and (5). Sindars also requested reimbursement of $641 in cash he paid toward his LFOs and $1,481.26 for his community service work that was applied as LFO credit. The court granted Sindars' motion in part, vacating his conviction and refunding the $641 in cash payments he made toward his LFOs. The court denied Sindars' request for reimbursement of his community service hours.

## ANALYSIS

### I. THRESHOLD ISSUES

As a threshold matter, the State argues that we should not consider Sindars' claims because his claim amounts to a civil claim for damages that is barred by sovereign immunity. We disagree.

The State maintains that Sindars' claims should have been brought as a civil claim for damages and that they cannot be considered in the context of his CrR 7.8 motion. Essentially, the State contends that because RCW 10.01.160(4) does not specify that it authorizes reimbursement

for community service credit, any claim for reimbursement of community service credit is a civil claim. However, a panel of this court recently decided in *State v. Nelson*, ___ Wn. App. 2d. ___, 558 P.3d 197, 207-08 (2024), that CrR 7.8 is the only proper avenue for such a claim and adopted the reasoning of *Civil Survival Project v. State*, 24 Wn. App. 2d 564, 572-78, 520 P.3d 1066 (2022), *review denied*, 2 Wn.3d 1011 (2023). We agree with *State v. Nelson* and *Civil Survival Project* that CrR 7.8 is the proper mechanism for *Blake* defendants to seek reimbursement of LFOs. Thus, we conclude that Sindars' claim was appropriately brought under CrR 7.8.

Having concluded that the request for reimbursement was properly raised under CrR 7.8, we also reject the State's argument that Sindars' claim is barred by sovereign immunity. *See* Br. of Resp't at 6-21. Under article II, section 26 of the Washington Constitution, "[t]he legislature shall direct by law, in what manner, and in what courts, suits may be brought against the state." WASH. CONST. art. II, § 26. But here, as the *State v. Nelson* panel explained when it rejected an identical argument, "this is a criminal matter and there is no civil suit against the State." 558 P.3d at 208 n.11.

The State has not presented argument for why sovereign immunity would apply in the context of a CrR 7.8 motion. The State has not provided, nor have we found authority under which a procedurally proper motion for relief in a criminal case was treated as a civil claim for damages and thereby barred under sovereign immunity. The State analogizes to federal case law for the idea that "when the government is otherwise required to give back property taken in a criminal action but for some reason could not, a defendant's claim for compensation is barred by sovereign immunity" Br. of Resp't at 12 (citing *Ordonez v. United States*, 680 F.3d 1135 (9th Cir. 2012)). However, the federal cases cited do not apply here. *See Hanson v. Carmona*, 1 Wn.3d 362, 383,

525 P.3d 940 (2023) (declining to analogize or apply federal cases applying the United States Constitution's Eleventh Amendment sovereign immunity to issues involving article II, section 26). The State's other arguments are similarly not convincing because they rely on an assumption that CrR 7.8 motions amount to suits against the State, which they are not.

Therefore, we disagree with the State and hold that sovereign immunity does not bar Sindars' claim for reimbursement of his LFO credit.

## II. SUBSTANTIVE DUE PROCESS

Sindars argues that due process entitles him to a refund of the community service credited toward his LFOs. We disagree.

A. <u>Substantive Due Process Framework</u>

The Fourteenth Amendment protects people from deprivations of "life, liberty, or property" without "due process of law." U.S. CONST. amend. XIV, § 1. The due process clause provides substantive and procedural protections. *Romero v. Dep't of Soc. & Health Servs.*, 30 Wn. App. 2d 323, 345, 544 P.3d 1083 (2024). The two inquiries are distinct: substantive due process "requires deprivations of life, liberty, or property to be substantively reasonable," whereas procedural due process entitles individuals to "'notice . . . and an opportunity to be heard to guard against erroneous deprivation.'" *Id.* at 339, 345 (quoting *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 216, 143 P.3d 571 (2006)).

We review substantive due process challenges de novo. *In re Adoption of K.M.T.*, 195 Wn. App. 548, 559, 381 P.3d 1210 (2016). Our substantive due process inquiry begins with "'the nature of the right involved.'" *Chong Yim v. City of Seattle*, 194 Wn.2d 682, 689, 451 P.3d 694 (2019) (quoting *Amunrud*, 158 Wn.2d at 219). If the government has interfered with a fundamental right,

we apply strict scrutiny and ask whether "'the infringement is narrowly tailored to serve a compelling state interest.'" *Id.* (quoting *Amunrud*, 158 Wn.2d at 220). If the "'state action does not affect a fundamental right, the proper standard of review is rational basis.'" *Id.* (quoting *Amunrud*, 158 Wn.2d at 222). The rational basis test asks whether the challenged deprivation was "'rationally related to a legitimate state interest.'" *Id.* (quoting *Amunrud*, 158 Wn.2d at 222).

B.      Sindars Has Not Identified a Fundamental Right

Sindars asserts that *Nelson v. Colorado*, 581 U.S. 128, 137 S. Ct. 1249, 197 L. Ed. 2d 611 (2017), created "a due process right to 'the refund of exactions dependent upon a conviction subsequently invalidated.'" Appellant's Opening Br. at 6 (quoting *Nelson*, 581 U.S. at 139). But as the *State v. Nelson* panel explained, *Nelson v. Colorado* was a *procedural* due process case and does not create a fundamental right that is implicated by a trial court's failure to reimburse community service LFO credit. *State v. Nelson*, 558 P.3d at 203. Sindars relies on the fact that the legislature has allowed fines and fees to be satisfied with community service hours in multiple contexts, but he does not explain how this legislative judgment creates a fundamental right for constitutional substantive due process purposes. And although Sindars maintains that the supposed "right to be made whole" is "tied to the presumption of innocence," he does not explain *how* the trial court's decision not to order reimbursement for community service hours directly violates the presumption of innocence, outside of citations to *Nelson v. Colorado*. Appellant's Opening Br. at 7.

We therefore conclude that here, as in *State v. Nelson*, Sindars has not identified a fundamental right that would warrant strict scrutiny under the due process clause of the Fourteenth Amendment.

C.      Reimbursing Only Cash LFO Payments Survives Rational Basis Review

Because Sindars has not shown a threat to a fundamental right, we apply rational basis review. *See Chong Yim*, 194 Wn.2d at 688. Sindars argues that the refusal to reimburse his community service is supported only by economic justifications that are insufficient to survive rational basis review. We disagree.

Under the rational basis test, the challenged state action must bear only a rational relationship to a legitimate state interest. *Id.* at 689. We "may assume the existence of any necessary state of facts" that we "can reasonably conceive in determining whether a rational relationship exists between the challenged law and a legitimate state interest." *Amunrud*, 158 Wn.2d at 222.

Here, we examine whether a legitimate state interest supports the trial court's partial denial of Sindars' CrR 7.8 motion and refusal to reimburse the cash equivalent of Sindars' LFOs that were completed via community service. We conclude that the State has a legitimate interest in limiting reimbursement to those *Blake* defendants who paid their LFOs in cash. For one thing, the distinction between LFOs paid in cash and those satisfied via community service serves to control the flow of reimbursement requests and allows the state to efficiently refund all readily definable monetary payments. *See In re Pers. Restraint of Runyan*, 121 Wn.2d 432, 449, 853 P.2d 424 (1993) (holding that the State has a legitimate interest in "controlling the flow" of postconviction relief when "[f]aced with a virtually unlimited universe of possible postconviction claims."). Additionally, it is rational to distinguish between community service and cash LFO payments when ordering reimbursement from State funds because, unlike community service performed in

lieu of payment, cash payments directly benefitted the State. *See State v. Nelson*, 558 P.3d at 206-07.

Sindars relies on *Willoughby v. Department of Labor & Industry*, 147 Wn.2d 725, 57 P.3d 611 (2002) *abrogated by Chong Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019), to assert that preserving state funds cannot constitute a legitimate interest to satisfy rational basis review. But *Willoughby* applied a different substantive due process standard, the now-rejected "'unduly oppressive' test" that was formerly interpreted as an elevated level of scrutiny applied to laws regulating the use of property. *Chong Yim,* 194 Wn.2d at 696. *See Willoughby*, 147 Wn.2d at 733. Moreover, it is well established that governments are entitled to make incremental decisions about economic policy, something that refund allocation certainly is. *See Williamson v. Lee Optical of Okla. Inc.*, 348 U.S. 483, 489, 75 S. Ct. 461, 99 L. Ed. 563 (1955). And here, unlike in *Willoughby*, we are not confined to the State's proffered justifications but "may assume the existence of any necessary state of facts" that could provide a rational basis for the classification. *Amunrud*, 158 Wn.2d at 222. As a panel of this court explained, there are other reasons to distinguish among LFOs paid in cash versus those paid in labor: it was reasonable to limit the volume of reimbursements and prioritize cash payments that benefitted the State. *State v. Nelson*, 558 P.3d at 206-07.

Thus, we hold that the trial court's refusal to reimburse Sindars' community service performed in lieu of paying his *Blake* LFOs survives rational basis review, and Sindars' substantive due process claim fails.

III. EQUAL PROTECTION

Sindars argues that the trial court's ruling violated his right to equal protection under the Fourteenth Amendment of the United States Constitution. We disagree.

A.     Standard of Review

The equal protection clause of the Fourteenth Amendment prohibits state actors from denying "to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "'Equal protection requires that all persons similarly situated should be treated alike.'" *Romero*, 30 Wn. App. 2d at 347 (internal quotation marks omitted) (quoting *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 608, 192 P.3d 306 (2008)).

To bring an equal protection challenge, an individual must make a threshold showing that they "received disparate treatment because of membership in a class of similarly situated individuals and that the disparate treatment was the result of intentional or purposeful discrimination." *State v. Osman*, 157 Wn.2d 474, 484, 139 P.3d 334 (2006). If the individual does not make this threshold showing, no equal protection analysis is required. *State v. S.D.H*, 17 Wn. App. 2d 123, 141, 484 P.3d 538 (2021).

B.     Sindars Has Not Shown Disparate Treatment Because of Indigency

To show a violation of the equal protection clause, Sindars must first "establish his classification by showing he was treated differently from others who were similarly situated." *Osman*, 157 Wn.2d at 485. Sindars attempts to show that people who satisfy their LFOs through community service hours are similarly situated to wealthier people who satisfy their LFOs through cash payments, but people performing community service in this context are treated differently because of their indigency. We disagree.

Sindars' claim rests on the assumption that indigent individuals satisfy their LFOs through community service and wealthy individuals satisfy their LFOs by paying cash. He asserts that the trial court's ruling "privileges well-off offenders by reimbursing them for LFO payments while withholding reimbursement from indigent offenders who paid their LFOs through their own labor." Appellant's Opening Br. at 14. However, Sindars makes no attempt to show that the group of individuals who performed community service in lieu of LFOs consists of exclusively or even mostly indigent individuals.

Sindars may be correct that those who paid their LFOs in cash are, on the whole, wealthier than those who performed community service in lieu of LFOs. But this does not establish that the trial court permitted him to perform community service in lieu of payment *because* he was indigent. And the record in this case does not establish that the trial court based its ruling on his indigency. Indeed, the trial court found twice that Sindars would be able to pay LFOs: first, when the LFOs were initially imposed, and second, when the trial court rejected Sindars' motion to terminate his LFOs due to his indigency. And when the court permitted community service work upon Sindars' motion, the record does not show that the court based its ruling on Sindars' indigency or even considered his finances at all.[3]

Although the record does not reflect what authority the trial court relied on to permit community service in lieu of Sindars' LFOs, we note that RCW 10.01.160(4) allows a sentencing

---

[3] Sindars relies on *State v. Phelan,* 100 Wn.2d 508, 671 P.2d 1212 (1983) as an example of a case where the court found a classification based on wealth where some people could obtain pretrial release by paying bail and others could not. But the *Phelan* court was able to conclude that the inability to make bail in that case *was* a result of indigency. As explained above, we cannot reach the same conclusion on this record, namely that the different treatment alleged was because of indigency.

court to "modify the method of payment" of court costs "or convert the unpaid costs to community restitution hours" if payment poses a "manifest hardship" to the defendant. RCW 10.01.160(4) goes on to provide, "Manifest hardship exists where the defendant is indigent." However, at the time of the relevant orders, RCW 10.01.160(4) mentioned neither indigency nor community restitution. *See* former RCW 10.01.160(4) (2010). And neither the current nor former statute actually *requires* a finding of indigency to convert LFOs to community service, and we cannot presume that the legislature actually meant to create a class of indigent defendants when it chose to use a different term. *See Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 173 P.3d 885 (2007) ("When the legislature uses two different terms in the same statute, courts presume the legislature intends the terms to have different meanings."). Thus, Sindars has not provided facts or law to support his contention that the challenged state action "creates a classification based on wealth." Appellant's Opening Br. at 14.

On this record, Sindars cannot meet his burden to show that the trial court's partial denial of his CrR 7.8 motion was disparate treatment of similarly situated people because of indigency. Because he has failed to make the threshold showing that he "received disparate treatment because of membership in a class of similarly situated individuals and that the disparate treatment was the result of intentional or purposeful discrimination," our review of Sindars' equal protection challenge ends here and we need not address his argument for heightened scrutiny. *Osman*, 157 Wn.2d, at 484.

IV. PRIVILEGES AND IMMUNITIES CLAUSE

Sindars argues that refusing to reimburse his labor was a violation of Washington's privileges and immunities clause. We disagree.

Washington's privileges and immunities clause states, "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." Wash. CONST. art. I, § 12. The Washington Supreme Court has "often construed article I, section 12 of the Washington Constitution to be consistent with the equal protection clause of the Fourteenth Amendment" and "appl[ies] an independent state constitutional analysis only when the legislation implicates a fundamental right to state citizenship." *Wash. Food Indus. Ass'n & Maplebear, Inc. v. City of Seattle*, 1 Wn.3d 1, 27, 524 P.3d 181 (2023) (plurality opinion); *id.* at 38 (Johnson, J., concurring) (agreeing with the lead opinion except as to the police power issue).

We apply a two-part test, first asking "whether a challenged law grants a 'privilege' or 'immunity' for purposes of our state constitution." *Martinez-Cuevas v. DeRuyter Bros. Dairy*, 196 Wn.2d 506, 519, 475 P.3d 164 (2020). State privileges and immunities are "'those fundamental rights which belong to the citizens of the state by reason of such citizenship.'" *Maplebear*, 1 Wn.3d at 28 (internal quotation marks omitted) (quoting *Am. Legion Post No. 149*, 164 Wn.2d at 607). We move on to the second part of the test only if the challenged state action implicates a state privilege or immunity, and ask "whether there is a 'reasonable ground' for granting that privilege or immunity" *Martinez-Cuevas*, 196 Wn.2d at 519.

Sindars argues that the refund of cash LFOs constitutes a special benefit that is given to wealthy *Blake* defendants but not to indigent *Blake* defendants. But he fails to show that this supposed benefit has any connection to a fundamental right of state citizenship. Therefore, Sindars' privileges and immunities claim fails because absent a fundamental right of state citizenship, the

analysis is identical to the equal protection clause analysis we performed above. *See Maplebear*, 1 Wn.3d at 27.

## V. INVOLUNTARY SERVITUDE

Sindars argues that "[o]nce the court vacated his conviction pursuant to *Blake*, his community service work was transformed into involuntary servitude by the court's refusal to provide restitution for his unpaid labor." Appellant's Opening Br. at 23. We disagree.

The Thirteenth Amendment of the United States Constitution provides, "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. CONST. amend. XIII, § 1.

Sindars' claim rests on his assertion that he was "force[d]" to work by "[t]he machinery of the state." Appellant's Opening Br. at 23. But Sindars was not *forced* to perform any labor—he affirmatively chose to perform community service in lieu of LFO payments when he moved the trial court to permit him to do so. Sindars has not identified authority supporting his claim that labor performed voluntarily can be retroactively treated as involuntary labor, as he asks us to do here. Therefore, he has not shown a violation of the Thirteenth Amendment.

Moreover, Sindars claims that he "faced physical restraint if he willfully declined to perform community service." *Id.* at 22. But a person who was indigent at the time they performed the labor could not have been jailed for failing to satisfy LFOs. *State v. Nason*, 168 Wn.2d 936, 945, 233 P.3d 848 (2010). Sindars therefore could not have been compelled to perform labor under threat of incarceration as a result of indigency, as he now claims.

Finally, Sindars cites *State ex rel. Evans v. Bhd. of Friends*, 41 Wn.2d 133, 247 P.2d 787 (1952), to argue that he was not "duly convicted" within the meaning of the Thirteenth Amendment. Appellant's Opening Br. at 22-23; *see* U.S. CONST. amend. XIII, § 1 (permitting involuntary servitude "as a punishment for crime whereof the party shall have been duly convicted."). Sindars contends that under *Evans*, his drug possession conviction should retroactively be treated as "'a legal nullity,'" including at the time he performed his community service work. Appellant's Opening Br. at 23 (quoting *Evans*, 41 Wn.2d at 143). In Sindars' view, this renders the Thirteenth Amendment's exception for criminal punishments inapplicable.

However, when another *Blake* defendant made a similar argument based on *Evans*, the Washington Supreme Court explicitly rejected the premise "that an unconstitutional statute is a nullity, void ab initio." *State v. Olsen*, ___ Wn.3d ___, 555 P.3d 868, 875 (2024). In *Olsen*, a *Blake* defendant relied on *Evans* to argue that *Blake* retroactively rendered a guilty plea involuntary because it rendered simple drug possession a "nonexistent crime." *Id.* at 871, 874. The supreme court rejected this argument because the *Evans* reasoning "has since been rejected" and concluded that despite *Blake*'s retroactive effect, "simple drug possession was a valid crime" at the time of the challenged guilty plea. *Id.* at 875. Therefore, even if Sindars could show that his labor was involuntary, it would likely be permissible as a punishment for a crime.

CONCLUSION

We affirm.

_____
GLASGOW, J

We concur:

_____
CRUSER, C.J.

_____
CHE, J.